**Jeffrey J. PYLE, et al., Plaintiffs, Appellants,**

v.

**The SOUTH HADLEY SCHOOL COMMITTEE, et al., Defendants, Appellees.**

No. 94–2050.

United States Court of Appeals, First Circuit.

Heard April 7, 1995.

Decided May 26, 1995.

William C. Newman with whom John Reinstein, Massachusetts Civil Liberties Union Foundation, and Christopher H. Pyle were on brief for appellants.

Raymond R. Randall with whom Ryan, Boudreau, Randall & Kirkpatrick was on brief for appellees.

Before CYR, Circuit Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

Two South Hadley High School students, Jonathan and Jeffrey Pyle, sued the principal, the superintendent and the School Committee of the South Hadley School (the "School") for violation of their First Amendment and state statutory rights. The Pyles were each excluded from the School at one time or another for wearing tee-shirts emblazoned with messages its officials deemed in violation of its dress code. The district court granted the Pyles' request for injunction against the code's harassment provision, but upheld the provision prohibiting message clothing considered obscene, lewd, or vulgar.[1] Only the Pyles appeal, and the sole issue is the validity of the court's ruling with respect to the anti-vulgarity provision.

The court held that neither the Massachusetts statute, *post,* nor the First Amendment, prevents the School from prohibiting clothing exhibiting messages school officials reasonably consider obscene, lewd or vulgar, even if sporting such clothing causes no· disruption or disorder. *Pyle v. South Hadley School Committee,* 861 F.Supp. 157 (D.Mass.1994). We vacate the court's ruling on the state law, and on our own motion certify a question regarding its interpretation to the Supreme Judicial Court of Massachusetts. We defer ruling with respect to the federal constitutional question pending resolution of the Pyles' rights under state law, and retain

---

1. This provision of the dress code reads:

Students ... are not to wear clothing that ... [h]as comments or designs that are obscene, lewd or vulgar.

jurisdiction.[2]

## I. Background

The court's findings of fact amply illustrate the trajectory of the tee-shirt turmoil; we simply summarize.

All began on March 24, 1993, when a gym teacher objected to a shirt Jeffrey wore to her class trumpeting, "Coed Naked Band: Do It To The Rhythm." This set in motion a series of face-offs between Jeffrey, backed by his father, Christopher Pyle, a college teacher of constitutional law, later joined by his younger brother Jonathan, and various school officials over the exercise and permissible extent of the School's authority to regulate student attire in school. Twice Jeffrey requested that the School formally draft a dress code because the informal system that had operated until then was, in his opinion, too vague. When it finally relented and issued a code containing the provision at issue here, the Pyles signalled their opposition by sporting a series of shirts emblazoned with messages deliberately calibrated to test the mettle and sweep of the School's enforcement authority. Shirts were banned, then unbanned, as the School struggled to implement its new dress code under the Pyles' assault. Ultimately, only the Coed Naked shirt that originally sparked the conflict, and one other, worn by Jonathan ("See Dick Drink. See Dick Drive. See Dick Die. Don't Be A Dick."), were banned under the new policy.

## II. Public School Students' Freedom of Expression Under Massachusetts Law

In 1974 Massachusetts enacted a statute that reads, in pertinent part:

The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school. Freedom of expression shall include without limitation, the rights and responsibilities of students, collectively and individually, (a) to express their views through speech and symbols, (b) to write, publish and disseminate their views, (c) to assemble peaceably on school property for the purpose of expressing their opinions....

M.G.L. c. 71, § 82.[3] The statute was originally applicable only to those cities and towns which chose to accept it, but became mandatory throughout the State in 1988. St.1988, c. 137, M.G.L. c. 71, § 86, as amended.

There is no Massachusetts decisional law interpreting section 82. If, as the Pyles contend, it creates a broad student right to exhibit messages subject to restriction only for obscenity, defamation, fighting words, incitement and disruption, we need not reach the question whether the First Amendment does so. There is no contention that the tee-shirts fell into any of these concededly prohibitable categories, so we start with a routine question of statutory interpretation. We do not find the answer altogether clear.

On the sole basis of a press release issued by the legislator who sponsored the 1988 amendment, the district court read the statute to "require[ ] that 'school-sponsored' speech, such as articles in student-run newspapers, ... be judged by the same standard as 'school-tolerated' speech," but to have "no relevance ... to the analysis of a school administrator's efforts to curb vulgarity and sexual innuendo." 861 F.Supp. at 168. Its conclusion, 861 F.Supp. at 167, that the statute was "aimed at" the Supreme Court's decision in *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (holding public school officials may regulate the content of school newspapers, plays and other "school sponsored expressive activities"), presumably meant aimed at the *Hazelwood* principle, as the statute preceded the actual decision by fourteen years. However, neither the statute nor the amendment rendering it mandatory mentions anything about "school-sponsored" or "school-tolerated" speech. We do not consider the press sheet of a former high

---

2. Manifestly if the statute does not disempower the School we shall have to consider the First Amendment.

3. The statute also exempts the school and school officials from criminal and civil liability for student expression.

school journalist, issued fourteen years after the original statute was written, to offer adequate interpretive guidance. Nor does any legislative history provide a basis for the court to build clauses into the statute. On its face, the statute guarantees students' freedom of expression "shall not be abridged" except insofar as it "cause[s] any disruption or disorder within the school." M.G.L. c. 71, § 82. Students may "express their views through speech and symbols," presumably including a stance against drinking and driving, "without limitation." *Id.*

It is difficult to think of at least the "See Dick" shirt, though reasonably thought vulgar, as not expressing a "view." At the same time, our difficulty with proceeding along this straightforward route is that it puts a federal court in the awkward position of issuing this binding interpretation ahead of any state tribunal where, despite the apparent language, it is quite possible that the Massachusetts legislature never considered licensing students to use vulgarity at will in the public schools, and depriving school officials of all authority to regulate it if non-disruptive. Nor is it easy to read into the statute a blanket prohibition against a school's suppressing vulgarity. In the absence of any state court interpretation, we would be in the position of dictating state-wide policy to local school officials at the behest of two students.

### III. Certification

■ While uncertainty or difficulty regarding state law is generally not sufficient to justify traditional abstention, *Meredith v. City of Winter Haven,* 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943), it may be enough to counsel certification where that procedure is available. *Lehman Bros. v. Schein,* 416 U.S. 386, 390–91, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) (certification "helps build a cooperative judicial federalism"). We would be reluctant to burden the Court with certification, and the litigants with the attendant delay, were we not convinced that the statutory question is of sufficient and prospective importance to state policy in the administration of its school system, and affects students and school administrators statewide for us to make a far-reaching decision without advice.

We, accordingly, certify on our own motion an issue of state law to give the Supreme Judicial Court the opportunity to clarify the extent of state-created rights. *See Globe Newspaper Co. v. Beacon Hill Architectural Comm'n,* 40 F.3d 18, 22 (1st Cir.1994).

We certify the following question to the Supreme Judicial Court of Massachusetts pursuant to its Rule 1:03, 382 Mass. 698, 700 (1981), and retain jurisdiction pending its determination:

> Do high school students in public schools have the freedom under M.G.L. c. 71, § 82 to engage in non-school-sponsored expression that may reasonably be considered vulgar, but causes no disruption or disorder?