# United States Court of Appeals
## For the First Circuit

Nos. 06-2705, 06-2706

CLAIRE BROWN,

Plaintiff, Appellee/Cross-Appellant,

v.

CROWN EQUIPMENT CORPORATION,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
[Hon. David M. Cohen, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,
Torruella and Dyk,[*] Circuit Judges.

Jeffrey F. Peck with whom Ulmer & Berne, LLP, John A.K. Grunert and Campbell, Campbell, Edwards & Conroy, P.C. were on brief for appellant/cross-appellee.

Jonathan S. Franklin, Kimberly S. Walker, Fulbright & Jaworski L.L.P., Robin S. Conrad and Amar D. Sarwal, National Chamber Litigation Center, Inc., on brief for International Association of Defense Counsel and Chamber of Commerce of the United States of America, Amici Curiae.

Nicole L. Lorenzatti with whom Terrence D. Garmey and Smith Elliott, Smith & Garmey P.A. were on brief for appellee/cross-appellant.

Stephen B. Pershing, Center for Constitutional Litigation, P.C., and Lewis S. Eidson on brief for the American Association for Justice, Amicus Curiae.

September 4, 2007

[*]Of the Federal Circuit, sitting by designation.

**BOUDIN**, **Chief Judge**.  The central question on this appeal is whether Maine law would recognize a post-sale duty to warn claim where a manufacturer's product is not defective at the time of sale but a hazard later develops because of a change in the user environment.  Other jurisdictions have disagreed on this question and the Maine Supreme Judicial Court has not spoken.  We conclude that this determinative issue should be certified to the Maine Supreme Judicial Court, along with a damage computation issue arising under a Maine statute.

The relevant facts can be briefly recounted.  On August 1, 2003, Thomas Brown, an employee at Prime Tanning, was killed while operating a forklift in Prime's Sanford, Maine warehouse.  Defendant, Crown Equipment Corporation, manufactured the forklift in 1989 and sold it to a third party in 1990.  Prime Tanning purchased the forklift in the secondary market from a used equipment dealer.

Earlier, in 1995, Crown had learned that new shelf design in many warehouses now exposed operators of the company's forklifts to the risk of "horizontal entry," for example--by having shelving enter the forklift at an unshielded level and strike the operator.  Crown developed a "backrest extension kit" for the forklift, reducing the risk of horizontal intrusions.  In August 1999, Crown mailed Product Reference 1.15 to 13,000 of its customers, informing

them of the horizontal intrusion risk and methods of mitigating the risk, including the kit.

Prime Tanning did not receive the update because it had not purchased the forklift directly from Crown. A few months later, a Crown employee visited Prime Tanning to perform an OSHA-mandated evaluation of a forklift modification proposed by Prime Tanning. Crown did not provide Product Reference 1.15 to Prime at that time, nor did it inform Prime of the risk or of the kit. Brown's death in 2003 was due to a horizontal intrusion suffered while swinging the rear of his forklift near a shelf.

Thereafter, Brown's wife, Claire Brown, brought suit against Crown in Maine Superior Court seeking damages arising from the accident and, on the basis of diversity of citizenship, Crown removed the case to the federal district court. She claimed that the forklift was defective when designed and that Crown had negligently failed to warn Prime Tanning of the risk once it became known to Crown. Over Crown's objection, the district judge instructed the jury that such a failure to warn claim existed under Maine law.

The jury found for Crown on the defective product claim but for Brown on the failure to warn claim. On the latter, the jury awarded $4.2 million in damages; this the district judge reduced to $1,523,809 under a Maine statute capping the consortium damages element, 18-A M.R.S.A. § 2-804 (1998 & Supp. 2006), and to

account for a comparative negligence finding of the jury.[1] Crown has appealed to this court on the failure to warn claim; Brown has cross appealed as to the comparative negligence adjustment by the district judge.

No request for certification was made in the district court or in this court. This is not surprising. Brown, as she explained at oral argument, prefers to preserve her verdict without delay or uncertainty from a reference; Crown probably counts on the adage that in a diversity case a federal court will normally not make new law for the state. Williams v. Monarch Mach. Tool Co., 26 F.3d 228, 232 (1st Cir. 1994).

Ordinarily, we can make a reasonable judgment as to the state or direction of local law, and conducting a certification proceeding in another court adds to delay and to cost. Further, often only the interests of the parties are at stake and, if neither side has asked for a reference and the state remains free to clarify its law in a later case, the argument for certification after a trial is especially thin.

In this instance, however, the legal issue is very difficult and the implications go beyond the parties. We start

---

[1]Specifically, the jury awarded $800,000 in economic damages, $400,000 on account of Mr. Brown's conscious pain and suffering, and $3 million for the "loss of comfort, society, and companionship of Thomas Brown." Under the Maine statutory cap, the $3 million in loss of consortium damages was then reduced to $400,000, 18-A M.R.S.A § 2-804, leaving total damages of $1.6 million, before the further modest adjustment for comparative fault.

with difficulty. Both sides cite Maine case law but the cases cited by both sides are distinguishable,[2] and we think the issue is open in Maine. The courts in other jurisdictions are quite divided--splintered might be a better description--as to whether and when to recognize a duty to warn arising after an un-defective product has been made and distributed.

Like the parties, lower courts tallying the "majority rule" have reached different results. Compare Irion v. Sun Lighting, Inc., No. M2002-00766-COA-R3-CV, 2004 WL 746823, at *17 (Tenn. Ct. App. 2004) ("[W]e note that, like the majority of states, Tennessee does not recognize a post-sale duty to warn."), with Davies v. Datapoint Corp., No. CIV. 94-56-P-DMC, 1996 WL 521394, at *2 n.5 (D. Me. Jan. 19, 1996) (saying that eighteen states have adopted a post-sale duty to warn while only three have rejected the duty).

Further, some of the broad statements favoring a duty come in cases where there were latent defects at the time of sale while other cases rejecting such a duty may also be driven by facts

---

[2]Compare Welch v. McCarthy, 677 A.2d 1066 (Me. 1996), and Jordan v. Hawker Mfg. Co., No. CV-97-194, 2000 WL 33675810 (Me. Super. Ct. Feb. 17, 2000), with Pottle v. Up-Right, Inc., 628 A.2d 672 (Me. 1993), and Bernier v. Raymark Indus., Inc., 516 A.2d 534 (Me. 1986). One opinion, from a Maine trial court, does rely directly on the Restatement provision invoked by Brown. Fortunato v. Specialized Bicycle Components, Inc., No. 96-617, 1997 Me. Super. LEXIS 355 (Me. Super. Ct. Nov. 19, 1997).

inhospitable to such a duty.[3]  The Restatement (Third) of Torts has

adopted a post-sale warning requirement, which it concedes is

relatively new, id. § 10 & cmt. a (1998); some states have accepted

and others have rejected it.[4]  The Maine SJC has adopted other

Restatement sections, but has been silent as to section 10.  See

Coyne v. Peace, 863 A.2d 885, 889 n.3 (Me. 2004).

The post-sale duty has general economic consequences--

some welcome and some perhaps less so.  There is a benefit to

deterring harm avoidable by reasonable precautions, and the

manufacturer may well be the most aware and efficient source of

warnings; but precautions may also have significant costs--often

passed along to customers--and may even make a state a less

attractive venue for manufacture or distribution.  Required notice

to one who was not a direct purchaser adds further complications.

Ultimately, the existence and scope of a post-sale duty

to warn under Maine law is a policy judgment affecting the safety

of the citizens of Maine, the costs they pay, and the investments

---

[3]Compare Lewis v. Ariens Co., 751 N.E.2d 862 (Mass. 2001)
(favoring the duty), and Crowston v. Goodyear Tire & Rubber Co.,
521 N.W.2d 401 (N.D. 1994) (same), with Carrizales v. Rheem Mfg.
Co., 589 N.E.2d 569, 579 (Ill. App. Ct. 1991) (rejecting it), and
Anderson v. Nissan Motor Co., 139 F.3d 599, 602 (8th Cir. 1998)
(same; applying Nebraska law).

[4]Sta-Rite Indus., Inc. v. Levey, 909 So. 2d 901, 905 (Fla.
Dist. Ct. App. 2004) (citing section 10); Lovick v. Wil-Rich, 588
N.W.2d 688, 694 n.4 (Iowa 1999); Lewis, 751 N.E.2d at 867.  Others
have expressly rejected the same.  Irion, 2004 WL 746823, at *17
(Tenn. Ct. App. Apr. 7, 2004); Modelski v. Navistar Int'l Transp.
Corp., 707 N.E.2d 239, 246 (Ill. App. Ct. 1999).

of businesses operating in Maine. And if one favors a duty to warn, the question how far to go remains open, especially with respect to indirect purchasers. Cf. Lewis v. Ariens, 751 N.E. 2d 862, 867 (Mass. 2001) (discussing tests for indirect purchaser duties). These are choices best made by the Maine SJC. Cf. Pyle v. S. Hadley Sch. Comm., 55 F.3d 20, 22 (1st Cir. 1995).

Under Maine law, certification is proper only if an issue is determinative--probably a short-hand for avoiding advisory opinions. 4 M.R.S.A. § 57 (1989 & Supp. 2006). We doubt this requires us to resolve all other non-Maine claims of error before certification, Hiram Ricker & Sons v. Students Int'l Meditation Soc'y, 342 A.2d 262, 264 (Me. 1975), but Crown makes two other claims of error as to instructions that do not raise separate Maine law issues and it is convenient to resolve them now.

First, Crown asked the court to instruct the jury that there was no duty by Crown to retrofit and to advise customers of safety improvements developed after the time of sale. Brown made no claim as to the former; as to the latter Crown says that Brown at least implied that there was such a duty. In our view, the district court's instructions to the jury and the question relating to the duty to warn made clear that the only duty at issue was to warn of the risk and directions for safe use.

Second, Crown argues that the district court should have instructed that OSHA regulations imposed on Prime a legal

obligation to advise in its training program of warnings listed in the operator's manual; Crown did in fact have a boilerplate warning about horizontal intrusions in its manual.  But the manual was offered in evidence and the jury was instructed that "[w]here a warning is given, the manufacturer may reasonably assume that it will be read and heeded."

Brown's cross appeal does raise a Maine law issue that is narrow and technical but by no means easy.  The jury initially awarded $4.2 million in damages, reduced by $200,000 for Mr. Brown's comparative negligence.  The $4.2 million in damages was reduced to $1.6 million after the application of a statutory cap on consortium damages.  This left the question of how to account for the jury determination of comparative negligence in the amount of $200,000.  Based on a ratio approach, the district judge reduced Brown's award by $76,191, producing a net award of $1,523,809.[5]

Brown argues that the district court should have accounted for the comparative negligence before applying the damage cap, reducing the $4.2 award to $4 million before applying the cap. On this theory, the total award would be $1.6 million rather than $1.6 million less an adjustment.  Crown, by contrast, argued in the district court that the full $200,000 should have been deducted

_____

[5]The $200,000 comparative negligence assessment was 4.7619% of the original $4.2 award.  The judge simply multiplied the adjusted award of $1.6 million by 4.7619% to reach the new comparative negligence offset of $76,191.

from $1.6 million, but it has not pursued this issue on its own appeal.

Brown also argues that because 14 M.R.S.A § 156 (2003) requires juries to calculate comparative negligence in "dollars and cents, and not by percentage," it was improper for the judge to convert the $200,000 in comparative negligence into a percentage of the original award; but the jury did make such a dollar determination and the question now is how the judge should apply it where damage caps, not taken into account by the jury, have to be applied.

The parties have not provided, and we have not found, any Maine cases explicating the relationship between Maine's comparative negligence statute and its statutory damage caps. Cases elsewhere cited to us by Brown appear to be distinguishable.[6] Adopting Brown's suggestion in this case would mean that the comparative negligence offset would be deducted only from the loss of consortium damages, which are in any event capped at a much lower level, leaving the remaining damages awards unscathed by any adjustment.

---

[6]Several have applied comparative negligence adjustments before statutory damages caps, Horner v. Sani-Top, Inc., 141 P.3d 1099, 1103-04 (Idaho 2006); Rodriguez v. Cambridge Hous. Auth., 795 N.E.2d 1, 9 (Mass. App. Ct. 2004); McAdory v. Rogers, 215 Cal. App. 3d 1273, 1277-79 (Cal. Ct. App. 1989), but none involved a cap applying to only one of several damage components and a comparative damage finding assessed against damages as a whole.

Accordingly, if not otherwise instructed, we would probably apply the district court's common sense compromise position--possibly with a minor adjustment to its computation if it had been urged.[7] But the statute does not by its terms address the application issue that confronts us; the problem will doubtless recur; and, as we are certifying the duty to warn question, it appears sensible to get instructions on the damage issue as well.

We therefore certify to the Maine SJC the following questions:

1. Does Maine law incorporate the rule of Restatement (Third) Torts: Products Liability § 10 that a manufacturer has a duty to warn known but indirect purchasers where its product was not defective at the time of sale but a product hazard developed thereafter?

2. Under Maine law, how is a jury's dollar adjustment for comparative negligence to be applied where a portion of the original damages award is reduced pursuant to the statutory damage cap?

The answer to the first question is likely to indicate clearly whether we should reverse or affirm as to liability. To the extent that the answer from the Maine SJC is qualified, we will

---

[7]The district court applied the comparative negligence percentage to the consortium award after applying the cap; one could argue for doing so before applying the cap, cf. Rodriguez, 795 N.E.2d at 9; but in this case the effect on the bottom line would be small.

address the liability issue in light of the Maine SJC's explanation as to Maine law.  As to the second question, we will again follow the Maine SJC's gloss on the Maine statute.

The clerk will transmit our opinion in this case, along with copies of the briefs and appendix, to the Maine Supreme Judicial Court.

It is so ordered.