# United States Court of Appeals
## For the First Circuit

No. 08-1257

IN RE ENGAGE, INC., ET AL.,

Debtors

ROPES & GRAY LLP,

Appellant,

v.

CRAIG R. JALBERT, as Liquidating Supervisor,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

D. Ross Martin with whom Christopher Thomas Brown, Jonathan B. Lackow, and Ropes & Gray LLP were on brief for appellant.
Robert M. Abrahamsen, Michael A. Albert, Allen S. Rugg, Eric G.J. Kaviar, Wolf, Greenfield & Sacks, P.C., Erik Paul Belt, and Bromberg and Sunstein LLP were on brief for Boston Patent Law Association, amicus curiae.
Andrew Z. Schwartz with whom Joshua S. Pemstein and Foley Hoag LLP were on brief for appellee.

October 6, 2008

**LYNCH**, **Chief Judge**. The key issue in this bankruptcy case is whether the Massachusetts attorney's lien statute, chapter 221, section 50 of the Massachusetts General Laws, applies to patent prosecution work performed by attorneys. The courts of the Commonwealth have never addressed this issue. Nor is it clear from existing case law or a reading of the statute what the answer is. Further, any chosen answer will have significant policy ramifications. We conclude the issue should be certified to the Massachusetts Supreme Judicial Court ("SJC"), pursuant to its Rule 1:03. See Boston Gas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008).

## I.

The case arises from federal bankruptcy proceedings initiated five years ago by Engage, Inc., an advertising software company, and certain of its affiliates ("Debtors"). The relevant facts are briefly recounted. Ropes & Gray LLP ("R&G") performed legal services -- primarily patent prosecution work -- for the Debtors from around July 2002 through May 2003. The Debtors filed petitions for relief under Chapter 11 of the Bankruptcy Code on June 19, 2003. In a filing before the bankruptcy court shortly thereafter, R&G asserted it was owed $108,737.11, secured by an attorney's lien under chapter 221, section 50 of the Massachusetts General Laws, for unpaid patent prosecution work performed prior to this date. Additionally, R&G asserted an unsecured claim for

-2-

approximately $49,517.37, primarily for corporate licensing work performed in 2003.

The Debtors, who had sold their patents and patent applications in transactions before and after the petition date, agreed to reserve from the sale proceeds an amount equal to R&G's asserted lien, while reserving their rights to object to R&G's claims. On August 4, 2004, the Liquidating Supervisor filed an objection to R&G's secured claim, arguing, inter alia, that the Massachusetts attorney's lien statute did not apply to patents and patent applications.

The bankruptcy court agreed, sustaining the Liquidating Supervisor's objection. In re Engage, Inc. (Engage I), 315 B.R. 208, 208 (Bankr. D. Mass. 2004). In an October 8, 2004 order, it held that the lien statute did not apply to patent prosecution work.[1] Id. at 213-14. It concluded that neither a patent nor a patent application is a "judgment, decree or other order" under the terms of the statute. Id. at 214. Even if a patent could be characterized as an order, the court reasoned that the proceeds from the sale of a patent would be derived not from the order but from the sale of the underlying intellectual property. Id. R&G could have no more than an inchoate lien in the proceeds from the

---

[1]    The bankruptcy court based its rejection of R&G's secured claim primarily on Virginia law, which it found to be applicable. Engage I, 315 B.R. at 211-13. However, it proceeded to analyze Massachusetts law in the alternative and reached the same conclusion. Id. at 213.

sale of the Debtors' patents and patent applications.  Id. at 214-15.    Thus,  the  bankruptcy  court  reasoned,  R&G's  claim  was unsecured.  Id. at 217.

R&G appealed the bankruptcy order to the district court. It also filed a motion requesting that the district court certify questions on the attorney's lien statute to the SJC.  In re Engage Inc. (Engage II), 330 B.R. 5, 6 n.1 (D. Mass. 2005).  On September 1, 2005, the district court affirmed the bankruptcy court, finding that the attorney's lien statute did not apply to patents or patent applications or to proceeds from the resulting sale.[2]  Id. at 7, 14-21.    The  district  court  also  rejected  R&G's  request  for certification,  concluding  that  the  issue  could  be  resolved  by applying existing case law.  See id. at 6 & n.1.  The matter was then returned to the bankruptcy court because the order was not yet "final" within the meaning of 28 U.S.C. § 158(d).

On August 15, 2007, R&G and the Liquidating Supervisor filed  a  joint  motion  before  the  bankruptcy  court,  agreeing  to liquidate  R&G's  claim.    The  parties  also  agreed  that  the Liquidating  Supervisor  would  reserve  $27,500,  which  R&G  would receive if it were ultimately found to have a secured claim.  The bankruptcy  court  approved  this  compromise  and  disallowed  the

---

[2]    The  district  court  rejected  the  bankruptcy  court's determination  that  Virginia  law  rather  than  Massachusetts  law applied.  Engage II, 330 B.R. at 14.  We agree that Massachusetts law applies.

-4-

secured claim in its final order, issued September 10, 2007. On December 27, 2008, the district court affirmed the final order on the grounds set forth in its 2005 decision. R&G appealed to this court[3] and again requested that questions on the Massachusetts attorney's lien statute be certified to the SJC.[4]

## II.

This court may certify questions to the SJC in cases, such as this, where it finds no controlling precedent and where the questions may be determinative of the pending cause of action. See Mass. S.J.C. R. 1:03; Boston Gas Co. v. Century Indem. Co., 529 F.3d at 15; Nieves v. Univ. of P.R., 7 F.3d 270, 274 (1st Cir. 1993). These conditions are met. First, the SJC has not decided whether the Massachusetts attorney's lien statute applies to patent prosecution work, and, if so, whether the attorney's lien attaches to proceeds from the sale of issued patents or patent applications. Second, in our view, this state law issue may be determinative of R&G's cause of action, and there is no controlling precedent, bringing the case within Rule 1:03. R&G's arguments in the

---

[3] The Boston Patent Law Association filed a brief as amicus curiae in support of R&G.

[4] R&G's motion for certification was denied on June 30, 2008, without prejudice to reconsideration by this panel after oral argument.

bankruptcy court depend on the appropriate construction of the Massachusetts attorney's lien statute.[5]

We also think it appropriate to exercise our discretion in favor of certification. In a case such as this, it is within our discretion either to "make our best guess on this de novo review issue" or to certify the question to the SJC. Boston Gas Co., 529 F.3d at 13. This is not a case in which "the course [the] state court[] would take is reasonably clear." Nieves, 7 F.3d at 275 (alterations in original) (quoting Porter v. Nutter, 813 F.2d 37, 41 n.4 (1st Cir. 1990)) (internal quotation marks omitted). Moreover, certification is particularly appropriate here since the answers to these questions may hinge on policy judgments best left to the Massachusetts court and will certainly have implications

---

[5] If the SJC determines, in response to the first question we certify, that the lien statute does not apply to patents or patent applications, that will be dispositive of the entire federal case. If the SJC holds that the lien statute does apply, it may be that that decision alone will not dispose of one portion of R&G's claim, which is to post-petition sale proceeds.

R&G claims that, under federal bankruptcy law, if it had a lien on any of the patents or patent applications that were sold subsequent to the petition date, then it would have a lien on the proceeds from any such sales, independent of state law. On this view, it is possible that only one of the two questions that we certify below will itself determine part of R&G's claim. If the SJC determines that the Massachusetts attorney's lien statute applies to patent prosecution work, then the status of R&G's claim as to the post-petition sale proceeds may hinge on federal rather than state law. Nonetheless, the second certified question will still be determinative as to the pre-petition sale proceeds.

To the extent it should become necessary, we will address the federal law issue in light of the SJC's answers. See Brown v. Crown Equip. Corp., 501 F.3d 75, 80 (1st Cir. 2007).

-6-

beyond these parties.  See Boston Gas Co., 529 F.3d at 14-15; Brown v. Crown Equip. Corp., 501 F.3d 75, 78 (1st Cir. 2007).

It is true that even in the absence of controlling precedent, certification would be inappropriate where state law is sufficiently clear to allow us to predict its course.  See Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP, 175 F.3d 14, 18 (1st Cir. 1999); Armacost v. Amica Mut. Ins. Co., 11 F.3d 267, 269 (1st Cir. 1993); Nieves, 7 F.3d at 274-75.  This case, however, presents a close and difficult legal issue.  See Boston Gas Co., 529 F.3d at 15; Brown, 501 F.3d at 77.

We explain why we think so.  Some background on the nature of patents and the patent prosecution process informs our analysis.  Patents are granted by the United States Patent and Trademark Office in potentially multi-staged proceedings which, while not akin to a traditional trial, may take on certain adversarial qualities.  Decisions of the Patent Office may be appealed by the applicant or, in some instances, challenged by a third party before the Board of Patent Appeals and Interferences. 35 U.S.C. § 134.  An applicant may challenge a decision by the Board by appealing to the Federal Circuit, id. § 141, or by filing a suit in district court, id. § 145.  If granted, a patent provides a right to exclude others from practicing an invention.  See id. §§ 271, 283; Crown Die & Tool Co. v. Nye Tool & Mach. Works, 261 U.S. 24, 35-37 (1923).  This exclusive right is "a species of property

. . . of the same dignity as any other property which may be used to purchase patents." Transparent-Wrap Mach. Corp. v. Stokes & Smith Co., 329 U.S. 637, 643 (1947). A favorable decision by the Patent Office thus provides the applicant with a property interest -- to exclude others from use of the property -- which may itself be sold, and in that sense is independent of the underlying intellectual property. This property interest, even at the stage of a patent application, is freely assignable. Federal law, 35 U.S.C. § 261, provides that "patents shall have the attributes of personal property. Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."

Turning back to the state law question, the Massachusetts attorney's lien statute provides that:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom.

Mass. Gen. Laws ch. 221, § 50. This present version of the statute was enacted in 1945. The previous version read:

> An attorney who is lawfully possessed of an execution, or who has prosecuted a suit to final judgment in favor of his client, shall

have a lien thereon for the amount of his fees
and disbursements in the cause . . . .

Rev. Laws. Mass. 1902 ch. 165, § 48.

In our view, the change in and expansion of the language in the 1945 amendment tends to support R&G's arguments that a patent application is a "claim" and that a patent is an "order in [the] client's favor." The lien statute was broadened in 1945 beyond actions and counterclaims to include "other proceeding[s]." It was also broadened to include "proceeding[s] before any state or federal department, board or commission" -- terms that encompass administrative proceedings and both state and federal proceedings. This tends to support R&G's argument that the state legislature's broadening of the statute was a rejection of a limitation on attorney's liens to only traditional "cause[s] of action, counterclaim[s] or claim[s]." By broadening the statute to other proceedings before any federal department, the state legislature, R&G argues, also rejected limiting the applicability of attorney's liens to trial-like proceedings against an adverse party.

The language of the statute itself does not contradict R&G's arguments. Pursuing a patent before the Patent Office clearly constitutes a "proceeding" before a federal department. The fact that "claim" is a term of art in patent law does not mean that the filing of an application for a patent before the Patent Office cannot also be a "claim" under the statute. See Black's Law Dictionary 264 (8th ed. 2004) (defining "claim" as, inter alia, "[a]

-9-

demand for . . . property . . . to which one asserts a right"). Nor does the plain language of the statute itself dictate that the issuing of a patent by the Patent Office -- which confers a legal right upon the client -- cannot be an "order."

The language and history of the state statute also tend to favor somewhat R&G's position that an attorney's lien may arise prior to the issuance of a "judgment, decree or other order." Given the structure of the amended statute, specifically the repetition of "upon," it is natural to read the statute as applying, independently, to a "cause of action, counterclaim or claim," to a "judgment, decree or other order in [the] client's favor," and/or to "proceeds derived therefrom." The Liquidating Supervisor argues that the text of the statute "follows the procedural progression of a typical litigation," so one must have a "judgment, decree or other order" and "proceeds derived" from that order for a lien to be enforceable. This reading is less natural.

The Liquidating Supervisor's reading is also somewhat out of keeping with the statute's history. The change in language implemented in 1945 may evince a legislative intent to abrogate the requirement that a <u>suit</u> proceed to <u>final</u> <u>judgment</u> before an attorney's lien attaches.

This is not a case, however, in which the text or statutory history are so clear as to make certification "a waste of judicial resources." See <u>Armacost</u>, 11 F.3d at 269. It is unclear,

-10-

for example, whether "therefrom" in the third "upon" clause is intended to refer to the subject of the previous two clauses or only to that of the immediately preceding clause. That is, the lien may apply to proceeds derived from a claim or a judgment or it may apply only to those derived from a judgment; the text does not obviously foreclose either reading. And while it is evident that the legislature intended to expand the applicability of the lien beyond court and court-like adversarial proceedings, it is also likely that it intended some limit on the scope of the statute. The Liquidating Supervisor argues that one consequence of an expansive reading of the statutory terms would be that a "cause of action" or "claim" may also extend to applications, filed by attorneys, for "taxi medallions, nursing home licenses, zoning variances, building permits, liquor licenses, . . . [or] environmental permits." Neither side can point to text or to legislative history that conclusively addresses this issue. This is not surprising. In 1945, the number and type of administrative proceedings were far fewer. Of course, patent applications made to the Patent Office predate the 1945 amendment.

The Liquidating Supervisor argues, and the district court found, that there is a body of case law interpreting the Massachusetts lien statute sufficient to allow a federal court safely to resolve the issues of state law presented in this case. If this were the case, then certification would be inappropriate,

-11-

notwithstanding the lack of binding precedent or unambiguous statutory command. See Marbucco Corp. v. Suffolk Constr. Co., 165 F.3d 103, 105 (1st Cir. 1999); Snow v. Harnischfeger Corp., 12 F.3d 1154, 1161 (1st Cir. 1993); see also Nicolo v. Philip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000).

The Liquidating Supervisor can point to language in certain opinions that appears to support his interpretation of the attorney's lien statute. We focus on the principal state cases cited. Torphy v. Reder, 257 N.E.2d 435 (Mass. 1970), arose from a suit in equity brought against Reder by Reder's wife to determine ownership in several stock certificates and bankbooks, among other things. Id. at 437. After a court ordered Reder to surrender the property, an attorney who had represented Reder through part of the proceedings claimed he had an attorney's lien on the stock certificates. Id. The SJC rejected the lawyer's claim, finding that "since there was no decree in [the client's] favor there was nothing to which the statutory lien could attach." Id. "[T]he type of lien created" by the attorney's lien statute, the SJC reasoned, "is a charging lien which binds the judgment or money decree for payment of expenses incurred and for services rendered by an attorney." Id. at 437-38 (emphasis added).

In Collins v. Town of Webster, 522 N.E.2d 12 (Mass. App. Ct. 1988), two parties, represented by different lawyers, were jointly awarded a judgment of $86,888.88 in a suit arising from a

-12-

taking by eminent domain of certain property by the town of Webster. Id. at 12-13. After judgment was entered, the attorney for one party claimed he had the right to be paid from the full amount of the damages awarded. Id. at 13. The Massachusetts appeals court rejected the claim that the attorney had a lien on the full amount, finding that he only had a lien over his clients' share of the recovery. Id. at 13-14. Under the Massachusetts statute, the court reasoned, "the attorney's lien may be enforced only to the extent of the judgment in favor of the client." Id. at 14.[6]

The language in these cases, however, does not provide "compelling guidance" on the direction of state law in the present context. Nicolo, 201 F.3d at 33. First, there is the danger of unmooring language from the facts of a case and the precise issue presented in the context of those facts. Neither Torphy nor Collins involve patent prosecutions or proceedings before an administrative agency. Further, as R&G notes, both are cases in which the

---

[6] The Liquidating Supervisor's citation to In re Leading Edge Prods., Inc., 121 B.R. 128 (Bankr. D. Mass. 1990), a bankruptcy court decision interpreting the Massachusetts statute, is not authoritative as to the direction of state law. The Liquidating Supervisor also cites two unpublished Massachusetts appeals court decisions, Bartermax, Inc. v. Discover Boston Multi-Lingual Trolley Tours, Inc., No. 06-P-1827, 2008 WL 314150 (Mass. App. Ct. Feb. 5, 2008), and Gormley v. Wilkins, No. 00-P-1490, 2002 WL 31204473 (Mass. App. Ct. Oct. 3, 2002). Under the appeals court rules, these decisions, issued prior to February 25, 2008, could not be relied upon or cited as precedent. See Chace v. Curran, 881 N.E.2d 792, 795 n.4 (Mass. App. Ct. 2008); Lyons v. Labor Relations Comm'n, 476 N.E.2d 243, 246 n.7 (Mass. App. Ct. 1985). We do not consider them.

-13-

attorney's lien was asserted after a resolution to the proceedings was reached.[7]  By R&G's reading, these cases deal only with the question of what constitutes a judgment "in [the] client's favor" once a judgment has been issued; they say nothing about how a state court would interpret the statute in the pre-judgment context.

R&G can also point to language supporting its interpretation of the statute.  See, e.g., In re Discipline of an Attorney, 884 N.E.2d 450, 462 n.19 (Mass. 2008) ("By the plain terms of [the statute], for an attorney to be entitled to file a lien, there must be, among other requirements, 'an action, counterclaim or other proceeding in any court,' and the attorney must have 'appear[ed] for [the] client' in that matter."  (alterations in original)).[8]  Thus, we find that the existing case law does not

---

[7]    The same is true of Northeastern Avionics, Inc. v. City of Westfield, 827 N.E.2d 721 (Mass. App. Ct. 2005), and Craft v. Kane, 747 N.E.2d 748 (Mass. App. Ct. 2001), two state court cases that the Liquidating Supervisor argues adopt the reasoning of Leading Edge.  The disputes in both Northeastern Avionics and Craft arose after settlement agreements had been reached in the underlying actions.  See Ne. Avionics, 827 N.E.2d at 725 (holding that a settlement constitutes a "judgment" for the purposes of the Massachusetts attorney's lien statute and therefore that a lien could attach to the proceeds of that settlement); Craft, 747 N.E.2d at 752 n.8 (distinguishing Leading Edge on the grounds that, "[h]ere, . . . there is a settlement payment of money," and therefore a "judgment" to which the lien attached).

[8]    R&G points out that the attorney's lien statutes of two other states have been interpreted in accordance with R&G's arguments, see Hedman, Gibson & Costigan, P.C. v. Tri-Tech Sys. Int'l, Inc., No. 92 Civ. 2757, 1994 WL 18536, at *4 (S.D.N.Y. Jan. 14, 1994); Schroeder, Siegfried, Ryan & Vidas v. Modern Elec. Prods., Inc., 295 N.W.2d 514, 515-16 (Minn. 1980).  The language of the statutes involved in those cases is, however, very different.

-14-

provide sufficient guidance to allow us reasonably to predict the course of Massachusetts law. See Brown, 501 F.3d at 77; Nicolo, 201 F.3d at 33.

This is also not a case in which the "policy arguments line up solely behind one solution." Boston Gas Co., 529 F.3d at 14. As the SJC has recognized, the "underlying goal" of the Massachusetts attorney's lien statute is "the protection of the unpaid attorney." Boswell v. Zephyr Lines, Inc., 606 N.E.2d 1336, 1341 (Mass. 1993). One may argue that a patent attorney who successfully secures a legal right for his or her client in proceedings before the Patent Office should receive the same protection accorded to an attorney who secures a favorable judgment for his or her client in court.

The Liquidating Supervisor cautions, on the other hand, that an overly broad reading of the statute would create a system of roving, secret liens, in which "any pending applications before, or rights granted by, any municipal, state or federal agency" would give rise to unrecorded liens of unlimited duration, causing considerable disarray to the rights of later purchasers.[9] Ultimately, determining the scope of the Massachusetts attorney's

---

[9]   R&G asserts there is nothing secret about the identity of the attorney on an issued patent or a patent application, as the name of the law firm appears on the first page of an issued patent and a search of patent applications lists all law firms that have appeared in a given patent prosecution.

lien statute may well involve policy judgments, and those judgments are best made by the SJC.  See Brown, 501 F.3d at 78.

We have noted that the fact "[t]hat a legal issue is close or difficult is not normally enough to warrant certification," since otherwise cases involving state law "would regularly require appellate proceedings in two courts."  Boston Gas Co., 529 F.3d at 15.  The answers to the questions in this case, however, clearly have implications which go beyond these parties.  See id.; Brown, 501 F.3d at 77.  Certification may superficially appear to be a less efficient route, but any answer a federal court may give on this state law question is not a final answer.  Only the SJC can give a final answer in this case.  Given the importance and complexity of the questions presented in this case, we find certification is proper here.[10]

We therefore certify to the Massachusetts SJC the following questions:

---

[10]     The Liquidating Supervisor argues that certification is improper because R&G failed to request certification prior to the bankruptcy court's first order and only requested certification in its appeal to the district court.  This may weaken R&G's claim for certification.  See Boston Car Co. v. Acura Auto. Div., Am. Honda Motor Co., 971 F.2d 811, 817 n.3 (1st Cir. 1992) ("[T]he practice of requesting certification after an adverse judgment has been entered should be discouraged." (quoting Perkins v. Clark Equipment Co., 823 F.2d 207, 210 (8th Cir. 1987))); Fischer v. Bar Harbor Banking & Trust Co., 857 F.2d 4, 8 (1st Cir. 1988).  However, R&G did request certification in the district court.  Moreover, this court maintains discretion to certify questions to the SJC when a party fails to request certification in the court below, or even sua sponte.  See Nieves, 7 F.3d at 278 n.15; Fischer, 857 F.2d at 8; see also Brown, 501 F.3d at 77.

-16-

1.  Does chapter 221, section 50 of the Massachusetts General Laws grant a lien on patents and patent applications to a Massachusetts attorney for patent prosecution work performed on behalf of a client?

2.  If chapter 221, section 50 of the Massachusetts General Laws does grant a lien and the issued patents or patent applications are sold, does the attorney's lien attach to the proceeds of the sale?

We would also welcome any additional observations about Massachusetts law that the SJC may wish to offer.

The clerk of this court is directed to forward to the Massachusetts SJC, under the official seal of this court, a copy of the certified questions and our decision in this case, along with a copy of the briefs and appendix filed by the parties, which set forth all facts relevant to the issues certified. We retain jurisdiction pending that court's determination.

It is so ordered.