# United States Court of Appeals
## For the First Circuit

No. 21-1649

KEN'S FOODS, INC.,

Plaintiff, Appellant,

v.

STEADFAST INSURANCE CO.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Leo T. Sorokin, U.S. District Judge]

Before

Kayatta, Lipez, and Howard,
Circuit Judges.

Lawrence G. Green, with whom Gregory S. Paonessa and Burns & Levinson LLP were on brief, for appellant.
Jeffrey E. Dolan, with whom Mark W. Shaughnessy and Boyle Shaughnessy Law PC were on brief, for appellee.

June 7, 2022

**KAYATTA**, **Circuit Judge**.  This case raises a significant question of state law:  Whether Massachusetts recognizes a common-law duty for insurers to cover costs incurred by an insured party to prevent imminent covered loss.  Because the answer to this question may be determinative of this case and because there does not appear to be controlling precedent from the Massachusetts Supreme Judicial Court on this question, we have decided to certify the question to the SJC under its rules.  See Mass. S.J.C. R. 1:03.  Our reasoning follows.

**I.**

We ask the SJC to opine on the following question of law:

> To what extent, if any, does Massachusetts recognize a common-law duty for insurers to cover costs incurred by an insured party to prevent imminent covered loss, even if those costs are not covered by the policy?

**II.**

The facts of this case are simple.[1]  In December 2018, an accidental discharge at one of Ken's Foods' processing facilities caused wastewater to enter Georgia waterways.  Ken's Foods immediately addressed the "pollution event" to prevent

---

[1]  Because summary judgment was entered against Ken's Foods, we "view the entire record in the light most hospitable" to Ken's Foods, "indulging all reasonable inferences in [its] favor." Quinn v. City of Boston, 325 F.3d 18, 23 (1st Cir. 2003) (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

further discharge and to clean up the pollution, including by fully cooperating with Georgia state officials. The source was contained by February 2019.

Part of Ken's Foods' effort went to preventing a suspension of operations at its Georgia processing facility. According to Ken's Foods, its efforts to prevent a suspension of operations included, first, stopping the actual pollution event. Second, it negotiated "allowances" with the county to accept pre-treated water that would otherwise have exceeded acceptable levels. Ken's Foods explained that without these allowances, its facility "would have been forced to stop all operations" or, alternatively, it would have had to "contract third party services for hauling and processing of waste water," which would have involved fees much greater than the allowances negotiated with the county. Finally, Ken's Foods continued to contain the contamination through "ongoing pumping of contaminated water" through its "temporary waste water treatment process," "before releasing the water to the county for further treatment." That temporary treatment was "installed to maintain plant operations and to reduce environmental impact." All told, Ken's Foods estimated that it incurred over $2 million in its efforts to prevent a suspension of operations.

Due to its prevention efforts, Ken's Foods never had to suspend operations at its Georgia facility. According to Ken's

Foods, this facility manufactures its entire line of salad dressings (in addition to other food products), producing an average monthly profit of "at least" $9.6 million, and employs approximately 350 full-time employees (who are collectively paid $1.6 million per month). Thus, without its prevention efforts, Ken's Foods would have incurred losses in excess of the $10 million coverage provided by its comprehensive environmental policy with Steadfast Insurance Co.

Ken's Foods filed a claim with Steadfast. The policy covered both clean-up expenses as well as business losses resulting from pollution events that cause a "suspension of operations." The relevant portion of the "suspension of operations" coverage provision reads:

> We will pay "other loss" to the extent resulting from a "new pollution event" on, at, or under a "covered location" . . . , if that "new pollution event":
>
> (a) Is first "discovered" during the "policy period"; and
>
> (b) Directly causes a "suspension of operations" at such "covered location" during the "policy period"; . . . .

"Suspension of operations" is defined under the policy to mean "the necessary partial or complete suspension of 'operations' at the 'covered location' as a direct result of a 'cleanup' required by 'governmental authority.'"

The policy also discusses Ken's Foods' duties regarding "mitigation":

> In the event of a "suspension of operations", the "insured" must act in good faith to:
>
> 1. Take steps to mitigate "actual loss of business income["]; and
>
> 2. Diligently execute and complete "cleanup" to the extent such "cleanup" is within the "insured's" control; and
>
> 3. Resume "operations" at the "covered location" as soon as practicable.

In its claim to Steadfast, Ken's Foods requested, among other things, reimbursement for the cost of its prevention efforts. Steadfast refused to pay those costs. Although it paid for expenses covered by the plain language of the policy, Steadfast explained that the policy did not cover ex ante prevention efforts; it only covered business losses resulting from a complete suspension of operations.

Ken's Foods sued in Massachusetts federal court, under diversity jurisdiction, seeking nearly $3 million "due to be paid by Steadfast under the Policy, together with interest, costs[,] and reasonable attorney's fees." It also sought treble damages under Chapters 93A and 176D of the Massachusetts General Laws, which penalize insurance companies who unreasonably refuse to pay valid claims.

The parties agreed to submit cross-motions for summary judgment on a single issue: "[W]hether Ken's Foods can recover from Steadfast the costs that it says it incurred to avoid suspending its operations after the pollution discharge." See Ken's Foods, LLC v. Steadfast Ins. Co., No. CV 19-12492, 2020 WL 4506013, at *1 (D. Mass. Aug. 5, 2020).[2] At the summary judgment hearing, Ken's Foods conceded that the policy on its face did not cover the type of preventative costs Ken's Foods incurred here. Ken's Foods argued that Massachusetts would nevertheless recognize a common-law duty that requires insurers to reimburse expenses incurred to prevent imminent covered loss.

The district court granted summary judgment for Steadfast because it concluded that there is no indication that Massachusetts common law entitles Ken's Foods to recover "costs undertaken to avoid a suspension of operations [that] are not covered by the applicable insurance policy." Ken's Foods, 2020 WL 4506013, at *2. The court noted that a fellow federal jurist had found that the Commonwealth would recognize this duty, id. at *1

---

[2] Steadfast also moved for summary judgment on the Chapters 93A and 176D claims, which the district court granted because "there is nothing to suggest that Steadfast's denial of coverage . . . was 'unreasonable,' 'in bad faith,' or the result of 'ulterior motives.'" Ken's Foods, 2020 WL 4506013, at *2 (quoting Clarendon Nat'l Ins. Co. v. Phila. Indem. Ins. Co., 954 F.3d 397, 410 (1st Cir. 2020)). Ken's Foods does not appeal that ruling. The parties have settled every other claim (but the claim for prevention costs) during the course of litigation.

(citing Demers Bros. Trucking v. Certain Underwriters at Lloyd's of London, 600 F. Supp. 2d 265, 274-75 (D. Mass. 2009)), but the court in this case ultimately found that decision unpersuasive because it only relied upon "decisions of state courts other than those of the Commonwealth applying law other than Massachusetts law [and] a single treatise," id. at *2. Ken's Foods appealed.

## III.

Before us, as in the district court, Ken's Foods relies solely on a common-law duty that would require Steadfast to cover expenses incurred to prevent imminent covered loss. Although it points to no Massachusetts case recognizing such a duty, Ken's Foods posits that the SJC would recognize the duty because (according to Ken's Foods) it is deeply rooted in the common law, the policy arguments in favor of such a duty map on to policy considerations the SJC has used to recognize similar common-law duties, and several other states recognize the duty.

Steadfast disagrees. It contends, first, that Massachusetts has categorically rejected applying any common-law duty that puts obligations on insurers beyond the express terms of the policy, citing Mount Vernon Fire Insurance Co. v. Visionaid, Inc., 76 N.E.3d 204, 209 (Mass. 2017). Steadfast then parries Ken's Foods' policy arguments, arguing that this duty is not actually widely recognized and urging the court to enforce the

plain terms of the contract as agreed upon by two sophisticated business entities.

## 1.

We disagree with Steadfast's first, overarching argument that Massachusetts has already decided the issue at hand by categorically rejecting the use of the common law to supplement coverage provided by the plain terms of an insurance policy. In Mount Vernon, as Steadfast points out, the SJC did say: "Where the language of an insurance policy is clear and unambiguous, we rely on that plain meaning, and do not consider policy arguments in interpreting the plain language." 76 N.E.3d at 209. But that prohibition on "consider[ing] policy" arguments was in a section of the opinion "interpreting the plain language" of the insurance policy itself. The SJC did not stop there. The court went on to determine whether the common-law "in for one, in for all" rule extended to requiring an insurer to file a counterclaim when fulfilling its contractual duty to defend even though the policy language itself did not assign such a duty to the insurer. See id. at 210-12. In doing so, the court reaffirmed that common-law principles can supplement insurance policies. In the SJC's words, "the 'in for one, in for all' rule did expand the class of actions that an insurer is obligated to defend." Id. at 211. Accordingly, we do not find in Mount Vernon a clear rule against common-law

- 8 -

supplementation that would resolve this appeal and obviate the need to certify this issue.

**2.**

Nothing else resolves our uncertainty on Massachusetts law as it bears on the issue before us. As explained above, there are no SJC decisions on point. One federal district judge in Massachusetts has concluded that the duty applies under Massachusetts law, see Demers, 600 F. Supp. 2d at 274-75, but we are not so sure.

When considering a difficult state law question on which the highest court of the state has not spoken directly, "we are free to make our own best guess as to Massachusetts law." Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 65 (1st Cir. 2001). In doing so, we have said that "the federal court may draw upon a variety of sources that may reasonably be thought to influence the state court's decisional calculus," including (1) "analogous decisions of the state's highest court," (2) "decisions of the lower courts of that state," (3) "precedents in other jurisdictions," (4) "the collected wisdom found in learned treatises," and (5) "any relevant policy rationales." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51-52 (1st Cir. 2008). Although this list is "not arranged in

any rigid hierarchy," id. at 51, we consider these sources in turn.[3]

First, Mount Vernon provides a somewhat apt analogous decision from the SJC. In explicating why it would not expand the common-law "in for one, in for all" rule to cover counterclaims rather than just defenses, the court explained that the expansion would "misalign[] the interests of the party who stands to benefit from the counterclaim (the insured) and the party who bears the cost of prosecuting the counterclaim (the insurer)." Mount Vernon, 76 N.E.3d at 211.

In one sense, the duty here would align the interests of the parties. Without a duty to compensate for actions that prevented a covered loss, an insured may decide to just allow their operations to be suspended to ensure it receives insurance proceeds (here, $10 million) rather than eat the costs (here, $2 million) to prevent the harm. See 12A Steven Plitt et al., Couch on Insurance § 178:10 (3d ed. Dec. 2021 Update).

---

[3] We pause here to note that the district court rejected Ken's Foods' argument for recognizing this common-law duty merely because no Massachusetts court had yet done so. That is too stringent a standard. The Demers court's approach -- relying on precedents in other jurisdictions and an influential treatise to make a guess -- is the correct one. See Andrew Robinson Int'l, 547 F.3d at 51-52. Had these sources generally and persuasively pointed in one direction here, we would not have hesitated to hold that Massachusetts would (or would not) recognize the duty.

- 10 -

But that is not necessarily or always so. An insured still has an interest in preventing a suspension of operations even if its insurance covers losses but not prevention, especially if the suspension would cost more than insurance would cover. Ken's Foods alleged that, had it not prevented the suspension of operations, it would have been out $10 million per month. It is not obvious to us that Ken's Foods would have permitted that to happen even if it were clear Steadfast had no obligation to reimburse the cost of prevention measures up to the $10 million coverage limit (per pollution event) under its policy. Even Ken's Foods itself admitted below that it "would have wanted to avoid firing any personnel and to meet its payroll obligations" and that its losses from a suspension of operations would have "consumed the Policy's entire limit of liability."

We turn next to lower court decisions. The parties have pointed to no relevant Massachusetts intermediate appellate court decisions (and we have located none on our own), but Steadfast believes it has found "the most analogous Massachusetts authority" in a trial-court decision. See Roche Bros. Supermarkets, LLC v. Cont'l Cas. Co., No. 2017-cv-159, 2018 WL 3404061 (Mass. Super. Ct. Mar. 16, 2018). Roche Bros. is not very helpful to our task, however, because it focuses solely on whether the policy, by its terms, required coverage of prevention costs. The court held that a landlord who preemptively removed snow off several of its Boston

- 11 -

apartment buildings in a heavy-snow year could not recover under a policy provision that covered roof collapse. No one appears to have argued that any background common-law duty applied. Moreover, even if Massachusetts clearly recognized a common-law duty for insurers to recompense prevention efforts that avoid imminent covered loss, we are dubious that it would have applied in that case as there is no indication the roofs were in any danger of imminent collapse. The landlord's decision in that case to remove snow seems to us to have been routine maintenance. For these reasons, we find no assistance in Roche Bros.

Another source we rely upon is the caselaw from other jurisdictions. On this question, however, states have gone both ways. The Pennsylvania Supreme Court provides the best case for explaining why a duty on insurers exists and should be recognized:

> If the plaintiff [insured] had not taken immediate and substantial measures to remedy the perilous situation, disastrous consequences might have befallen the adjoining and nearby properties. If that had happened, the defendant [insurer] would have been required to pay considerably more than is involved in the present lawsuit. It would be a strange kind of argument and an equivocal type of justice which would hold that the [insurer] would be compelled to pay out, let us say, the sum of $100,000 if the [insured] had not prevented what would have been inevitable, and yet not be called upon to pay the smaller sum which the [insured] actually expended to avoid a foreseeable disaster. . . . It is folly to argue that if a policy owner does nothing and thereby permits the piling up of mountainous claims at

- 12 -

the eventual expense of the insurance carrier, he will be held harmless of all liability, but if he makes a reasonable expenditure and prevents a catastrophe he must do so at his own cost and expense.

Leebov v. U.S. Fid. & Guar. Co., 165 A.2d 82, 84 (Pa. 1960). The Maryland Court of Appeals, however, has explicitly rejected this reasoning: "We are not persuaded by Leebov, or by any subsequent case that has followed the Leebov rationale, that concepts of fairness and equity justify the construction of an insurance policy to provide coverage where none exists under the clear language of the policy." W.M. Schlosser Co. v. Ins. Co. of N. Am., 600 A.2d 836, 839 (Md. 1992) (footnote omitted). Maryland's rejection of Leebov, however, was fundamentally based on a categorical decision not to supplement the plain language of a policy at all. As we explained above, Massachusetts law is not so categorical.

In Grebow v. Mercury Ins. Co., a California intermediate appellate court rejected an argument for a "duty of the insurer to reimburse the insured" for costs expended "to prevent an imminent insurance loss," concluding that "[t]here is no implied obligation to reimburse an insured for [such] costs." 194 Cal. Rptr. 3d 259, 268-70 (Cal. Ct. App. 2015). The Grebow court recognized that "[t]his is an issue that has conflicting authorities," id. at 268, but ultimately did not find the policy arguments persuasive. The court concluded that even if the insurer had no duty to cover prevention costs, an insured would "prevent an insurable loss from

occurring . . . because he or she would rather have the house and property in it than insurance proceeds or reconstruction." Id. at 271. Grebow also recognized that courts should hesitate before "compel[ling] the insurer to give more than it promised and [allowing] the insured to get more than it paid for." Id. at 270 (quoting Rosen v. State Farm Gen. Ins. Co., 70 P.3d 351, 368 (Cal. 2003)).

State courts are often influenced by "the collected wisdom found in learned treatises," so we look at those as well when hazarding a guess about how a state court would decide an issue. Andrew Robinson Int'l, 547 F.3d at 51-52. The Demers court cited to Couch on Insurance, which is a leading treatise regarding insurance law and to which the SJC has cited for decades. See, e.g., Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266, 1275 (Mass. 2022); Ruggerio Ambulance Serv., Inc. v. Nat'l Grange Ins. Co., 724 N.E.2d 295, 299 (Mass. 2000); Transam. Ins. Co. v. Norfolk & Dedham Mut. Fire Ins. Co., 279 N.E.2d 686, 688-90 (Mass. 1972). Couch explains that

> a common law duty on the part of the insured to mitigate covered losses, either by preventing them or minimizing their extent, and a corresponding common law right to recompense from the insurer for the cost of these efforts have been recognized even though the items involved may be ones as to which there is no express policy coverage.

12A Couch on Insurance § 178:10 (3d ed. 2021 Update) (emphasis added); see also 11A Couch on Insurance § 168:11 (3d ed. Dec. 2021 Update) (same, in a section regarding the duty to mitigate). Couch further explains that "[t]he rationale for this principle is common sense: any other rule would provide the insured with the economic incentive to allow the loss to occur, to the detriment of the insurer, quite possibly the insured, and in a fair number of cases, to the general public, as well." Id. § 178:10. Thus, "[r]eimbursement is available if labor was to prevent a covered loss." Id. "Where the insured takes such steps, it is clearly for the benefit of the insurer thereby creating a duty to reimburse the insured." Id. Couch also recognizes a "rather simple caveat that the mitigation cost is recoverable so long as it is reasonable and less than damages would have been without it." Id. Prevention costs are not recoverable if the imminent loss "is outside the coverage of the policy" such that "the costs incurred d[id] not, in fact, inure to the insurer's benefit." Id. § 178:11.

Another insurance treatise the SJC has looked to -- including in Mount Vernon -- is Windt's Insurance Claims and Disputes. But Windt simply mentions this issue and cites cases that go both ways. See 3 A.D. Windt, Insurance Claims & Disputes § 11:1 nn.2, 36-37 & accompanying text (6th ed. Mar. 2022 Update).

Finally, we consider relevant policy rationales, but we don't have much to add to the above. The primary policy arguments

on both sides have been covered throughout our discussion of the fonts of law we have surveyed. As is evident, there are policy rationales for and against recognizing a duty on insurers to cover prevention costs, and we see no overwhelming clue as to which tack the SJC would take if confronted with this question directly.

## IV.

"[U]ncertainty or difficulty regarding state law" -- though "generally not sufficient to justify traditional abstention" -- "may be enough to counsel certification where that procedure is available." Pyle v. S. Hadley Sch. Comm., 55 F.3d 20, 22 (1st Cir. 1995). And certification is "particularly appropriate" where, like here, "the answers to these questions may hinge on policy judgments best left to the Massachusetts court and will certainly have implications beyond these parties." In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008). Since "[t]his is also not a case in which the 'policy arguments line up solely behind one solution,'" id. at 57 (quoting Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 14 (1st Cir. 2008)), we believe certification is the best path forward.

There is one aspect of this case, however, that gives us significant pause. Ken's Foods opted to file this suit, raising purely state-law claims, in federal court. It could have asked the Massachusetts state courts to settle this dispute, but it chose not to do so. We have explained that a party "who chooses the

federal courts in diversity actions is in a peculiarly poor position to seek certification," Cantwell v. Univ. of Mass., 551 F.2d 879, 880 (1st Cir. 1977), especially where there is "uncertainty as to whether Massachusetts courts would recognize [the] cause of action," Tersigni v. Wyeth, 817 F.3d 364, 369 n.6 (1st Cir. 2016). Moreover, Ken's Foods waited until after it lost at summary judgment to request that the district court certify the issue. As Steadfast aptly described, Ken's Foods in essence treated the district court as "a no-lose trial run," in which it could have accepted a favorable result, while leaving open its ability to claim that a different court should have decided the issue now that it lost. We do "not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort." Cantwell, 551 F.2d at 880. Waiting until you lose before asking for certification "is almost always fatal unless the court sees strong policy reasons to insist on certification itself." In re Fuller, 642 F.3d 240, 244 (1st Cir. 2011).

We reiterate that Ken's Foods' strategy is not good practice, and we continue to discourage it. See Bos. Car Co. v. Acura Auto. Div., Am. Honda Motor Co., 971 F.2d 811, 817 n.3 (1st Cir. 1992) ("[T]he practice of requesting certification after an adverse judgment has been entered should be discouraged." (quoting

Perkins v. Clark Equip. Co., 823 F.2d 207, 210 (8th Cir. 1987))).
If Ken's Foods wanted the SJC to decide this suit, it should have
asked the Massachusetts court directly, or at least sooner.

That said, we have concluded that this is the rare case
in which, even in these circumstances, we "see[] strong policy
reasons to insist on certification [our]self." In re Fuller, 642
F.3d at 244. The traditional tools we use to hypothesize state
law point in both directions, and certification is not clearly to
Ken's Foods benefit, as we very well might have tipped in its favor
had we not opted to certify. Importantly, whether Massachusetts
common law recognizes an extra-contractual duty for insurers
raises important questions concerning a significant, regulated
industry. Moreover, we can see the question arising in future
cases, and having an answer to the question from the SJC would
eliminate an incentive for forum shopping. See Real Est. Bar Ass'n
for Mass., Inc. v. Nat'l Real Est. Info. Servs., 608 F.3d 110, 119
(1st Cir. 2010) (finding certification "especially appropriate"
where the question "raises serious policy concerns regarding the
practice of law that will certainly impact future case"). Finally,
at the conclusion of the appeal, we anticipate that all costs will
be taxed to Ken's Foods.

**V.**

Given the foregoing, the clerk of this court shall
forward to the SJC (under official seal) our opinion, as well as

- 18 -

the parties' appellate briefs and appendices.  We retain jurisdiction, with costs to be awarded in favor of Steadfast at the conclusion of this appeal unless we subsequently order otherwise.