**The GLOBE NEWSPAPER COMPANY, et al., Plaintiffs, Appellees,**

v.

**BEACON HILL ARCHITECTURAL COMMISSION, Defendant, Appellant.**

No. 94–1538.

United States Court of Appeals, First Circuit.

Heard Oct. 3, 1994.

Decided Nov. 22, 1994.

John R. Devereaux, Asst. Corp. Counsel, City of Boston Law Dept., with whom Albert W. Wallis, Corp. Counsel, Boston, MA, was on brief for appellant.

James C. Heigham, with whom Choate, Hall & Stewart, Boston, MA, and Alice Neff Lucan, Washington, DC, of Counsel, was on brief for appellees.

Before TORRUELLA, Chief Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant-appellant Beacon Hill Architectural Commission ("Commission") adopted a "guideline" that bans, *inter alia*, all newspaper distribution boxes from the Historic Beacon Hill District in Boston, Massachusetts. The plaintiffs-appellees, a group of newspaper publishers, challenged the guideline in the district court, which held that (1) the Commission lacked authority under Massachusetts law to adopt the guideline; and (2) the guideline violated the First Amendment. We decline to reach the First Amendment issue at this time, and certify the question of the Commission's rulemaking authority to the Supreme Judicial Court of Massachusetts.

## I. BACKGROUND

The Historic Beacon Hill District was created by an act of the Massachusetts General Court in 1955. 1955 Mass.Acts c. 616 ("the Act"), as amended by 1958 Mass.Acts c. 314 & 315, 1963 Mass.Acts c. 622, 1965 Mass.Acts c. 429, 1975 Mass.Acts c. 741, and 1982 Mass. Acts c. 624. The Act is intended to

> promote the educational, cultural, economic and general welfare of the public through the preservation of the historic Beacon Hill district, and to maintain said district as a landmark in the history of architecture and as a tangible reminder of old Boston as it existed in the early days of the commonwealth.

1955 Mass.Acts c. 616, § 2. The historical significance of the Beacon Hill District can hardly be doubted. As the Supreme Judicial Court of Massachusetts has stated:

> The [Beacon Hill] area was closely built up for the homes of persons of taste and culture in the architectural style of urban residences prevailing a century or more ago.... [T]he Beacon Hill section, with some exceptions, has remained to this day rather surprisingly free from inharmonious intrusions. Its general appearance is substantially what it was several generations ago. The Bulfinch front, so-called, of the State House, completed before the year 1800, is at the highest point of the hill. The famous Boston Common is located on the other side of Beacon Street, opposite the southerly boundary of the ... district. The area has contained the homes of many persons of distinction in the life of the State and Nation.

*Opinion of the Justices*, 333 Mass. 783, 786–87, 128 N.E.2d 563 (1955).

The defendant-appellant, Beacon Hill Architectural Commission, was created to review proposed changes to "exterior architectural feature[s]" within the District. 1955 Mass.Acts c. 616, § 7. An "exterior architectural feature" is defined as

> the architectural style and general arrangement of such portion of the exterior of a structure as is designed to be open to view from a public way, including kind, color and texture of the building material of such portion and type of all windows, doors, lights, signs, and other fixtures appurtenant to such portion.

*Id.* at § 3. Only "structure[s]" have exterior architectural features within the meaning of the act. The term "structure," the parties agree, is defined by reference to Mass.Gen.L. c. 143, § 1 (in lieu of the Boston Building Code, which no longer exists) as

> a combination of materials assembled at a fixed location to give support or shelter, such as a building, framework, retaining wall, tent, reviewing stand, platform, bin, fence, sign, flagpole, recreational tramway, mast for radio antenna or the like. The word "structure" shall be construed, where the context allows, as though followed by the words "or part or parts thereof".

Anyone who wishes to construct, reconstruct or alter an exterior architectural feature must apply to the Commission for a certificate of appropriateness. "In passing upon appropriateness,"

> the commission shall consider, in addition to any other pertinent factors, the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the exterior architectural feature involved and the relationship thereof to the exterior architectural features of other structures in the immediate neighborhood.

1955 Mass.Acts c. 616, § 7. The Commission must "spread upon its records the reasons for [its] determination" that a certificate of appropriateness should not issue. *Id.* A party aggrieved by the Commission's decision can appeal to the Superior Court for Suffolk County, which "shall annul the determination of the commission" if it is "unwarranted by the evidence" or "insufficient in law." *Id.* at § 10.

Not surprisingly, given the stream of applications for certificates of appropriateness, the Commission developed uniform policies toward certain recurring types of proposed alterations. In 1981, it formally adopted the policies as "guidelines." The guidelines regulate exterior architectural features such as masonry, roofs, windows, sash and shutters, doors, trim, paint, and ironwork. One of the guidelines states that "[f]reestanding signs are not permitted."

Plaintiffs distribute their newspapers in the District via home delivery, store sales, street vendors, and "newsracks." Newsracks are newspaper distribution boxes painted in various colors and featuring the name of the newspaper and other advertising logos. They are commonly anchored to lampposts, signposts, or fixtures on the sidewalk. The plaintiffs maintain a total of thirty-nine newsracks in the district.

Newsracks were first introduced to the District in the early 1980s. By 1983, Beacon Hill residents had begun to complain of the "unsightliness, congestion and inconvenience associated with the vending machines." Although the Commission believed that the newsracks violated the guideline prohibiting free-standing signs, it took no enforcement action because a city-wide regulation of newsracks was being discussed in the early 1980s.

In 1990, no regulation having been adopted, the Beacon Hill Civic Association petitioned the Commission for a guideline to exclude newsracks from the District. On February 21, 1991, the Commission adopted the following guideline:

> Publication distribution boxes (any boxes placed on the sidewalks to distribute publications, whether for charge or not) visible from a public way are not allowed within the District.

On April 1, 1991, the Commission notified the plaintiffs of the new guideline. One month later, it requested that the plaintiffs remove their newsracks by June 1, 1991. The plaintiffs have not applied for any certificates of appropriateness. The parties agree however

that, given the blanket ban imposed by the guideline, filing an application for such a certificate with the Commission would have been a futile exercise.

The plaintiffs filed this action in district court on August 28, 1991, seeking declaratory relief, damages, and preliminary and permanent injunctive relief from the publication distribution guideline, which allegedly violated their First Amendment right to distribute newspapers on Beacon Hill. Following a bench trial on stipulated facts, the court ruled from the bench that the publication distribution guideline offended the First Amendment. The guideline, "instead of being narrowly tailored with respect to the limitation on speech[,] is narrowly tailored to focus only on speech. It applies to no form of visual clutter other than public[ation] distribution boxes...." Significantly, the trial judge was "troubled whether there is statutory authority for the particular kind of legislative rule making" illustrated by the guideline. He did not decide the case on state law grounds, however, because "the questions about the Architectural Commission's authority are at least debatable on the present record ... and perhaps would require some supplementation of the record in order for the Court to resolve them...."

Before judgment had entered, the Commission adopted a new guideline that bans all "street furniture"—not just publication distribution boxes—from the District:

Street furniture, as defined below, shall not be permitted in the Historic Beacon Hill District with the exception of approved store-front merchandise stands and those structures erected or placed by authorized public agencies for public safety and/or public welfare purposes. Street furniture is defined as any structure erected or placed in the public or private ways on a temporary or permanent basis. Authorized public safety/public welfare street furniture includes, but is not limited to, such structures as street lights, traffic lights, mail boxes, fire hydrants, street trees, and trash receptacles.

Any such authorized public safety/public welfare street furniture or approved store-front merchandise stands shall be subject to Commission review and shall be in keeping with the architectural and historic character of the District and the criteria for exterior architectural features as specified in Chapter 616 of the Acts of 1955 as amended.

The Commission moved for reconsideration of the judgment, arguing that the new guideline is free from the constitutional defects of the old. The district judge found that the new guideline fared no better under the First Amendment. *See Globe Newspaper v. Beacon Hill Architectural Comm'n,* 847 F.Supp. 178 (D.Mass.1994). This time, however, he held that the Commission lacked authority under Massachusetts law to adopt the street furniture guideline. We examine the state law portion of the opinion in detail, and ultimately certify the issue of the Commission's rulemaking authority to the Supreme Judicial Court of Massachusetts.

## II. *THE COMMISSION'S RULEMAKING AUTHORITY*

### 1. *Are newsracks "structures"?*

From the beginning of this litigation, the plaintiffs have insisted that only *buildings* are "structures" with "exterior architectural features," and that newsracks are not "structures" within the Commission's jurisdiction. They now also claim that the Commission lacks authority to regulate anything on the sidewalks or streets of Beacon Hill. This new argument merely restates the threshold issue—are newsracks "structures"?

The district court so assumed without deciding. Although the plaintiffs' reading of "structure" presented "a close and rather curious question," Judge Keeton noted that the examples of "structure" given in the uniform state building code include tents, platforms, bins, and even flagpoles—none of which would be "structures" in the sense urged by the plaintiffs. *Id.* at 183.

To complicate matters, the guidelines themselves seem to ratify the plaintiffs' interpretation. The introduction to the guidelines states in part:

[T]he statute authorizes the Beacon Hill Architectural Commission to review pro-

posed changes to the exterior architectural features of *buildings* within the historic district. . . . Owners contemplating changes to the exterior of any *building* within the . . . District should be aware that no alteration will be approved that is inappropriate to the historical character, architectural design, and materials of the building or its setting [emphasis added].

We, like the district court, find the interpretation of "structure" to be a close question. It is unnecessary to resolve this threshold issue, however, because we have decided to certify to the SJC the ultimate question of the Commission's authority to adopt the street furniture guideline.

### 2. *Substantive rulemaking authority*

Although the distinction between substantive and procedural rulemaking is not entirely clear, it seems clear enough in the context of this case. The district court defined substantive rulemaking authority as the power to "adopt rules that state substantive criteria for determining whether individual applications will be granted." *Globe Newspaper*, 847 F.Supp. at 183. The street furniture guideline is a substantive rule. It makes plain that nothing can be done to make private "street furniture" appropriate to the District. In other words, applications for certificates of appropriateness will be denied whenever the structure involved is a piece of private street furniture.

Does the Commission have the power to adopt substantive rules? The 1965 amendment to § 4 of the Act provides in part:

The commission may adopt, amend and repeal rules for the regulation of its affairs and the conduct of its business[.]

1965 Mass.Acts c. 429, § 2. The district court interpreted this amendment as authority for procedural rulemaking only. The Commission argues that this reading reduces the amendment to surplusage; it reasons as follows. During its first ten years (1955–65), the Commission could not have carried out its statutory mandate if it lacked the implied power to make procedural rules for the conduct of its hearings, the filing and processing of applications, and the assignment of its staff. Therefore, the 1965 amendment necessarily added something new: the power to adopt substantive rules.

Taken at face value, this argument suggests that any time a governmental entity is expressly authorized to adopt rules, and the language of the authorization is not expressly limited to procedural rulemaking, the entity has been granted substantive rulemaking power. We doubt that the truth is quite so simple.

The case law at the time of the 1965 amendment does not dispel our doubt. The district court cited several cases for the proposition that the phrase "conduct of its business" was commonly used to refer to matters of procedure and internal management. *See Insurance Co. of North Am. v. Commissioner of Ins.*, 327 Mass. 745, 101 N.E.2d 335, 338 (1951) (commissioner of insurance shall grant license to an entity that has adopted "by-laws, rules and regulations governing the conduct of its business"); *Burt v. Municipal Council of Taunton*, 275 Mass. 535, 176 N.E. 511 (1931) (municipal order creating a bidding process for city contracts is a rule for "the conduct of the general business affairs of the city"); *Tapper v. Boston Chamber of Commerce*, 249 Mass. 235, 144 N.E. 89 (1924) (directors may fix a reasonable charge for use of Chamber facilities, based on their authority to adopt rules "for the government and proper business conduct of the Chamber"). None of the cases, however, addresses the dichotomy between substantive and procedural rulemaking, or explicitly states that the defendant could adopt *only* procedural rules. It is one thing to say that the phrase "conduct of its business" has been held to authorize a given procedural rule; it is quite another to say that the phrase authorizes procedural rules alone.

The final case cited by the district court, *Farnham v. Lenox Motor Car Co.*, 229 Mass. 478, 118 N.E. 874 (1918), held that the superior court's rules "regulating practice and procedure, expediting the trial of causes and the general conduct of its business" do not overcome the parties' constitutional right to have controverted facts decided by a jury. No court rule, substantive or procedural, could have changed the outcome in *Farn-*

*ham.* Lacking controlling authority in the decisions of the Supreme Judicial Court of Massachusetts, we find it fairly debatable whether the Act expressly confers substantive rulemaking power on the Commission.

The Commission draws an analogy between its own rulemaking authority and that conferred by Mass.Gen.L. c. 40C, the general law authorizing cities and towns to establish historic districts. Section 10(e) of c. 40C provides in part:

> The Commission ... may adopt and amend such rules and regulations not inconsistent with the provisions of this act and prescribe such forms as it shall deem desirable and necessary for the regulation of its affairs and the conduct of its business.

The comparison seems strained. First, the Commission cites no authority for its claim that the language of § 10(e) "is very clearly substantive rulemaking authority." Second, the phrase "not inconsistent with the provisions of this act" does not appear in the Beacon Hill Act. As the Commission acknowledges, the rulemaking language in c. 40C is "similar but not identical to that in the Commission's statute." We find nothing conclusive in the comparison.

### 3. *Is the guideline consistent with the Act?*

Assuming that the Act expressly or implicitly authorizes substantive rulemaking,[1] a reviewing court has to determine whether the street furniture guideline is consistent with the Act. No agency can adopt a substantive rule that clashes with substantive requirements found in its own enabling statute.

Section 7 of the Act, which we quoted earlier, sets forth a list of factors that the Commission "*shall* consider," in addition to "any other pertinent factors," in passing upon an application for a certificate of appropriateness (emphasis added): *e.g.*, "the historical and architectural value and significance, architectural style, general design, arrangement, texture, material and color of the exterior architectural feature involved and the relationship thereof to the exterior architectural features of other structures in the immediate neighborhood."

In the district judge's view, the street furniture guideline flouts the mandate of 1955 Mass.Acts § 7 because it bans all newsracks without regard to the setting or the exterior architectural features of any particular newsrack. Most of the other guidelines deal with the mutable characteristics of structures;[2] the street furniture guideline bans the *structures* themselves. In effect, the Commission will no longer consider the exterior architectural features of street furniture on a case-by-case basis. Yet the guidelines are prefaced by this comment: "Each application is considered on its individual merits, but the Beacon Hill Architectural Commission will act in accordance with the following guidelines[.]"

The Commission replies that it has a mandate to make aesthetic judgments to "preserv[e]" and "maintain" the historic Beacon Hill District in accordance with the purpose of the Act. § 2. Aesthetic judgments in-

---

**1.** On appeal, the Commission has not argued (as it did before the district court) that, even absent express authorization in the Act, the Commission has *implied* authority to adopt substantive rules because it has been vested with "broad discretion and flexibility." *See* Commission Brief at 21 ("Since the 1965 amendment provides express power for *substantive* rulemaking, the only question to be answered is whether or not the Street Furniture Guideline is within the express authority granted"). The Commission's argument of implied authority would normally be deemed waived on appeal. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.), *cert. denied*, 494 U.S. 1082, 110 S.Ct. 1814, 108 L.Ed.2d 944 (1990). Because we are certifying the issue of the Commission's rulemaking authority to the SJC, the SJC remains free to address arguments that we

might ignore. *Cf. Fischer v. Bar Harbor Banking and Trust Co.*, 857 F.2d 4, 8 (1st Cir.1988), *cert. denied*, 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989) (failure to raise an issue before the district court does not necessarily prevent this court from certifying the issue to the state supreme court).

**2.** *See, e.g.*, "Roofs and Roof Structures" Guideline no. 5 ("[u]npainted mill-finished aluminum is inappropriate" for "flashing, gutters, and downspouts"); "Windows, Sash and Shutters" Guideline no. 4 ("[o]nly clear-paned, non-tinted glass shall be used...."). A significant exception is the guideline banning freestanding signs, the authority for which the district court also questioned.

volve, to some extent, the exercise of sound discretion. Although the Commission's idea of good taste is not all that matters under the Act, the legislature has arguably vested the Commission with broad discretion to decide the appropriateness of whole classes of exterior architectural features, and even whole classes of *structures*, if necessary.[3]

## III. *CERTIFICATION*

■ We previously denied the Commission's motion to certify the question of its authority to adopt the street furniture guideline to the SJC. The denial, which was provisional, was based in part on the Commission's failure to request certification below. For the reasons that follow, we now certify the question on our own motion.

First, the state law issues in this case may be determinative. We have found no controlling authority in the SJC's decisions, and "the course [the] state court[ ] would take" is *not* "reasonably clear." *Nieves v. University of Puerto Rico*, 7 F.3d 270, 275 (1st Cir.1993) (quoting *Porter v. Nutter*, 913 F.2d 37, 41 n. 4 (1st Cir.1990)).

■ Second, significant concerns of federal-state comity have been raised here. Soon after the publication distribution guideline was adopted, the Commission requested that all newsracks be removed from Beacon Hill. The plaintiffs brought this action without having filed applications for certificates of appropriateness. Although there is no doubt that the applications would have been denied, the Massachusetts courts were deprived of an opportunity to review the decisions of the Commission for factual and legal sufficiency. Where, as here, the parties have bypassed a state procedure that would have permitted a state court to decide an issue of state law on which there is no controlling authority, certification of the issue serves our "concern to promote federal-state comity...." *Fischer*, 857 F.2d at 7 n. 2 (quoting *White v. Edgar*, 320 A.2d 668, 675 (Me.1974)).

Third, the delays of certification will not prejudice the parties. The Commission itself, albeit belatedly, moved for certification. The plaintiffs' newsracks will not be disturbed unless there is a final judgment by this court reversing the judgment below. We therefore need not rush to decide a difficult First Amendment issue in order to prevent the chilling of protected speech.

■ Fourth, the state law issues in this case may have ramifications for other governmental entities that derive their rulemaking authority from similar statutory language. Home rule is a matter of peculiarly state and local concern. Where possible, state courts should rule in the first instance on the scope of local governmental authority.

■ Although we are rarely "receptive to ... requests for certification newly asserted on appeal," *Nieves*, 7 F.3d at 278, in an appropriate case we may certify an issue of state law on our own motion. *See Maine Drilling and Blasting, Inc. v. Insurance Co. of North Am.*, 34 F.3d 1, 3 (1st Cir.1994). We do so here.

*A question certified to the Supreme Judicial Court of Massachusetts, with jurisdiction retained pending that determination.*

## CERTIFICATION

For the reasons discussed in *Globe Newspaper Co., et al. v. Beacon Hill Architectural*

---

3. The parties also make several pragmatic arguments as to whether a ban on newsracks serves the purposes of the Act. The Commission asserts that there is no historical precedent for the newsracks. "[T]he visual clutter created by their presence on the sidewalks ... clearly detracts from the historic and architectural character of the district." Moreover, the newsracks have "accumulated ... to the point that pedestrian access is being significantly restricted." Based on its experience and expertise, and its mandate to promote the "educational, cultural, economic and general welfare of the public through the preservation of the historic Beacon Hill district," 1955 Mass.Acts § 2, the Commission made a reasonable judgment that newsracks and other types of street furniture are not appropriate to the district.

The plaintiffs counter that the streets and sidewalks of Beacon Hill, in 1955 as well as today, bear no resemblance to their Nineteenth Century precursors. The public way is already crowded with innovations such as automobiles, paved roads, traffic lights, parking meters, and parking signs; "there was and is little or no history to preserve on the streets and sidewalks of Beacon Hill." The aesthetics of the streets and sidewalks were "a lost cause" even before the first newsracks arrived.

*Commission,* No. 94–1538, a question of Massachusetts law on which we are unable to find clear, controlling precedent in the decisions of the Supreme Judicial Court of Massachusetts may be determinative in this case. Accordingly, we certify the following question to the Supreme Judicial Court of Massachusetts pursuant to its Rule 1:03—

Did the Beacon Hill Architectural Commission have authority under 1955 Mass.Acts c. 616 (as amended) to adopt the "Street Furniture Guideline"?

We have stated and discussed the facts relevant to the question certified in *Globe Newspaper Co.* We, of course, welcome the advice or comment of the Supreme Judicial Court on any other question of Massachusetts law it deems material to this case.

The Clerk will transmit this question and our opinion in this case, along with copies of the briefs, exhibits, and appendix to the Supreme Judicial Court of Massachusetts.