# United States Court of Appeals
## For the First Circuit

No. 12-1917

EASTHAMPTON SAVINGS BANK; CHICOPEE SAVINGS BANK;
HAMPDEN BANK; UNITED BANK; MONSON SAVINGS BANK;
COUNTRY BANK FOR SAVINGS,

Plaintiffs, Appellants,

v.

CITY OF SPRINGFIELD,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

---

Before

Lynch, Chief Judge,
Stahl and Howard, Circuit Judges.

---

Tani E. Sapirstein, with whom Sapirstein & Sapirstein, P.C. was on brief, for appellants.
Brenda R. Sharton, Thomas M. Hefferon, William F. Sheehan, and Goodwin Procter LLP on brief for Massachusetts Bankers Association, Inc., amicus curiae.
Thomas D. Moore, with whom Edward Pikula, Anthony Wilson, and City of Springfield Law Department were on brief, for appellee.
Lee D. Goldstein on brief for Harvard Legal Aid Bureau, National Consumer Law Center, National Community Reinvestment Coalition, Massachusetts Law Reform Institute, and Massachusetts Alliance Against Predatory Lending, amici curiae.

November 22, 2013

**LYNCH, <u>Chief Judge</u>**.  This case presents facial challenges under both state and federal law to two local Ordinances enacted by the City of Springfield.  In broad terms, the Ordinances impose new legal duties on (1) property "owner[s]" to maintain property during the foreclosure process and provide a $10,000 cash bond per foreclosure to the City and (2) on mortgagees to attempt a settlement through a new particular system of negotiations before foreclosing.  As to the first Ordinance, the central point of contention is that its definition of "owner" includes mortgagees who are not in possession and have begun the foreclosure process, and it appears to impose these duties on foreclosing mortgagees regardless of whether the mortgagors are still in possession.

Objecting to the imposition of these new duties, six banks brought this suit in state court, seeking to have the Ordinances invalidated as inconsistent with and preempted, under both field and conflict preemption principles, by the comprehensive state laws governing foreclosure and property maintenance, and as inconsistent with federal and state constitutional guarantees.  The plaintiff banks seek declaratory and injunctive relief preventing the City from enforcing the Ordinances.  The City removed the case to federal court on the grounds of federal question jurisdiction.[1]

---

[1]  The complaint recited various federal constitutional claims, including procedural and substantive due process, vagueness, and unlawful takings.  These miscellaneous claims quickly fell away and are no longer at issue in this case.  The only federal claim remaining is a Contracts Clause claim.

The banks filed a motion for judgment as a matter of law, which the City opposed and countered with a cross-motion to dismiss or for summary judgment. The district court decided that the Ordinances were valid and granted the City's motion. See Easthampton Sav. Bank v. City of Springfield, 874 F. Supp. 2d 25 (D. Mass. 2012). The banks now appeal, seeking reversal and entry of judgment in their favor. Because the outcome of this case turns on unresolved questions of Massachusetts law and raises significant policy concerns better suited for resolution by the Massachusetts Supreme Judicial Court, we certify the dispositive state law questions to that court. See Mass. S.J.C. R. 1:03.

                                I.

     The housing market collapse of 2008 led to a significant increase in the number of mortgage foreclosures, both nationally and in Massachusetts. The City of Springfield was particularly hard-pressed by foreclosures and concluded that properties left vacant during or after foreclosure can threaten the public safety by, among other things, attracting criminal activity or drawing squatters who, without any available utilities, may cause fires. These harms can in turn lower the values of neighboring properties, causing more foreclosures and creating a vicious circle.

     In response, the City enacted the two Ordinances relating to foreclosures. The first, the "Foreclosure Ordinance," requires "owner[s]" of properties in the foreclosure process to provide

24-hour on-site security personnel or else secure all doors and windows, remove hazardous materials, turn off utilities, clear any trash or standing water, and maintain liability insurance, among other things.[2]  See Springfield, Mass. Ordinances ch. 285-8 et seq. (2011).  It also defines the term "owner" to include mortgagees who have begun the foreclosure process, regardless of whether the mortgagee is in possession.  Id. ch. 285-9.  We set forth the Ordinance's full definition of "owner" in the Appendix.  The Ordinance also requires owners to provide to the Springfield Building Commissioner a cash bond of at least $10,000 within thirty days of the property becoming vacant or within fifteen days of initiating the foreclosure process.  If the owner fails to comply

_____

[2]  Among the Ordinance's many requirements, in its own terms, are the obligations for owners to: "file one set of space utilization floor plans for any buildings on [vacant or foreclosing] property with the Fire Chief and one set of said plans with the Commissioner" and "certify space utilization plans as accurate twice annually"; "[r]emove from the property, to the satisfaction of the Fire Commissioner, hazardous material as that term is defined in MGL c. 21K"; "secure all windows and door openings and ensure that the building is secured from all unauthorized entry continuously . . . or provide twenty-four-hour on-site security personnel"; "post 'No Trespassing' signs" if the property is vacant; "[m]aintain the property . . . free of overgrowth, trash and debris, and pools of stagnant water, and ensure that structures are maintained in a structurally sound condition"; "drain all water from the plumbing and turn off all electricity between September 15 and June 15 of each calendar year" if the property is vacant; "[m]aintain the property in accordance with the Massachusetts State Sanitary Code, the Massachusetts State Building Code . . . and any Springfield ordinances concerning the maintenance of property [or zoning]"; and "[m]aintain liability insurance on the property and furnish the Director with a copy of said certificate of insurance." Springfield, Mass. Ordinances ch. 285-10 (2011).

with the Ordinance's terms, the cash bond will be used to defray the City's cost of maintaining the property. If the owner does comply, the bond is later returned, less some portion kept by the City to cover its administrative expenses.[3] The portion retained by the City may be used to fund the City's expenses on other properties, including properties in which the owner has no interest. See id. ch. 285-10(A)(11).

The second Ordinance, the "Mediation Ordinance," requires mortgagors and mortgagees involved in a foreclosure of an owner-occupied residential property to participate in good faith in an "approved" mediation program. The mortgagee is subject to paying about 85% of the cost of the mediation program. The Ordinance says, inter alia, that a mortgagee must give good faith consideration to loan restructuring or forgiveness. The Mediation Ordinance inhibits a mortgagee from moving forward with a foreclosure otherwise authorized by state law without presenting a certificate from the mediator confirming that the mortgagee has participated in the mediation in good faith. It provides strong incentives to participate during the right to cure period

---

[3] The Foreclosure Ordinance does not state a specific amount that will be retained, instead providing only that "[a] portion of said bond shall be retained by the City as an administrative fee." Springfield, Mass. Ordinances ch. 285-10(A)(11) (2011). At a hearing in the district court, counsel for the City represented to the district court that the amount would likely be between $200 and $500. At oral argument before this court, the City represented that the amount would be between $500 and $1000.

established by state law.  The penalty for noncompliance is a $300 per day fine for the duration of the right to cure period.  See Springfield, Mass. Ordinances ch. 182 (2011).  Both Ordinances apply retroactively to mortgages that existed on their effective date of December 13, 2011.

The banks brought suit for declaratory and injunctive relief.  In its present posture, their case rests on three primary arguments: (1) the Ordinances violate the Contracts Clause of the U.S. Constitution; (2) under the Massachusetts Constitution, the Ordinances are preempted by Massachusetts state law; and (3) the Ordinances violate the Massachusetts Constitution by imposing an illegal tax.  This opinion concerns certification of the last two claims raised by the banks.

## II.

The Massachusetts Supreme Judicial Court (SJC) permits a federal court to certify a question to it "if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."  Mass. S.J.C. R. 1:03.[4]  This case meets those requirements.  And this

---

[4] Although neither party requested certification, we have the discretion to certify questions to the SJC sua sponte.  See Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 57 n.10 (1st Cir. 2008).  We advised the parties at oral argument that we were considering certification and gave them an opportunity to

court has a long history of certifying appropriate questions to the SJC. See, e.g., Real Estate Bar Ass'n for Mass., Inc. v. Nat'l Real Estate Info. Servs., 608 F.3d 110, 119-20 (1st Cir. 2010); Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 57-58 (1st Cir. 2008); Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 23-24 (1st Cir. 2008); Globe Newspaper Co. v. Beacon Hill Architectural Comm'n, 40 F.3d 18, 24-25 (1st Cir. 1994). The SJC has affirmatively responded to those certified questions.

A.        "Which may be determinative"

The issues of state law will be determinative in this case. The banks have raised two state claims as well as a claim under the Contracts Clause of the U.S. Constitution. Regardless of whether the Ordinances violate the Contracts Clause as applied to pre-Ordinance contracts, only a decision based on state law or the Massachusetts Constitution will give the banks the full measure of

---

present arguments and to propose questions to certify.

Neither party objected to certification as to the preemption question. However, both parties objected to certification of the illegal tax question, arguing that Massachusetts law is sufficiently clear that judgment should be entered in their favor. We disagree with the notion that this issue is clear.

The SJC has previously answered questions certified even over the objections of both parties. See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 640 N.E.2d 1101, 1102 (Mass. 1994) (answering certified question); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1224 (1st Cir. 1994) (noting objections to certification). In any event, the SJC may not need to address the illegal tax claim if the Foreclosure Ordinance is preempted by state law.

The banks also opposed certification of the Contracts Clause issue. Because that issue is one of federal law, we do not certify it.

relief they seek. As the Ordinances are applied prospectively, the only outcome-determinative issues are those of state law.[5] This satisfies the SJC's requirement that the state law issues "may be determinative" of the case. Mass. S.J.C. R. 1:03. As a result, we need not now reach the banks' Contracts Clause argument because the state law issues, which will be determinative with respect to mortgages created after the enactment date of the Ordinances, will also be determinative as to those existing before the enactment date.

B.        "No controlling precedent"

We have interpreted the SJC's requirement that there be "no controlling precedent" to prevent certification in cases when "the course [the] state court[] would take is reasonably clear." In re Engage, Inc., 544 F.3d at 53 (quoting Nieves v. Univ. of P.R., 7 F.3d 270, 275 (1st Cir. 1993) (alterations in original)) (internal quotation marks omitted). The course that the state court would take is not reasonably clear when a case "presents a

---

[5]  The Contracts Clause provides: "No state shall . . . pass any . . . Law impairing the Obligation of Contracts . . . ." U.S. Const. art. I, § 10. We apply a two-pronged test to determine whether a state law violates this provision, asking: (1) whether the state law substantially impairs a contractual relationship, and (2) if so, whether the impairment was reasonable and necessary to serve an important government purpose. See, e.g., United Auto., Aerospace, Agric. Implement Workers of Am. Int'l Union v. Fortuño, 633 F.3d 37, 41 (1st Cir. 2011). Ordinarily, based on the first prong of that test, a state law with only prospective effect will not violate the Contracts Clause because it will not impair an existing contractual relationship.

close and difficult legal issue." Id. This case presents close and difficult legal issues, and we cannot say that the course that the SJC would take is reasonably clear.

To be sure, the legal standards to apply are relatively apparent with respect to the banks' field and conflict preemption claims. See St. George Greek Orthodox Cathedral of W. Mass., Inc. v. Fire Dep't of Springfield, 967 N.E.2d 127, 132 (Mass. 2012) ("[L]ocal action is precluded either where the 'Legislature has made an explicit indication of its intention in this respect,' or 'the purpose of State legislation would be frustrated . . . so as to warrant an inference that the Legislature intended to preempt the field.'" (quoting Town of Wendell v. Att'y Gen., 476 N.E.2d 585, 589 (Mass. 1985))); Tri-Nel Mgmt., Inc. v. Bd. of Health of Barnstable, 741 N.E.2d 37, 43 (Mass. 2001) (providing for preemption if there is a "sharp conflict" between local ordinance and state law (quoting Take Five Vending, Ltd. v. Provincetown, 615 N.E.2d 576, 579 (Mass. 1993))); Fafard v. Conservation Comm'n of Barnstable, 733 N.E.2d 66, 71-74 (Mass. 2000). But the application of those standards is difficult, and the outcome far from certain in this case.

As to field preemption, Massachusetts has an extensive network of mortgage foreclosure laws, embodied in Massachusetts General Laws Chapter 244 and its numerous sections and subsections, and there is no doubt statewide uniformity is an important goal.

-10-

Cf. St. George Greek Orthodox Cathedral, 967 N.E.2d at 134 & n.14 (finding preemption of local ordinance based on state building code, while emphasizing the state law's purpose of "having centralized, Statewide standards in this area"); Town of Dartmouth v. Greater New Bedford Reg'l Vocational Technical High Sch. Dist., 961 N.E.2d 83, 92 (Mass. 2012) (finding preemption of local school funding agreement based on state education law "designed to deal uniformly with a Statewide problem" (quoting Bos. Teachers Union, Local 66 v. City of Boston, 416 N.E.2d 1363, 1370 (Mass. 1981))). And Springfield's problems with the effects of the mortgage foreclosure crisis, while serious, are far from unique in Massachusetts.

As to conflict preemption, the banks and their amicus point to specific state laws with which they say the Ordinances are in direct conflict or at least inconsistent.[6] Cf. Town of Wendell, 476 N.E.2d at 589-90 (discussing considerations behind determining whether local ordinance is "inconsistent" with state laws).

On the other hand, the state's mortgage laws may have been designed with an intent to allow a limited amount of regulation by municipalities to meet local concerns, even if those concerns are not unique. Cf. Fafard, 733 N.E.2d at 74 (declining

---

[6] To the banks' list of preemptive state laws, amicus Massachusetts Bankers Association adds the state's trespass law and a 2012 revision to the state's mortgage laws requiring certain efforts to avoid foreclosure, see Mass. Gen. Laws ch. 244, § 35B.

to find preemption of local permitting regime relating to state tidelands protection law).  The SJC is also better situated to determine whether there is field preemption or conflict or inconsistency between these Ordinances and the state's own efforts to respond to the 2008 mortgage crisis in its various communities, and whether the Ordinances are in tension with the state's mortgage, sanitary, or hazardous materials laws.  As the City notes, the SJC has not yet interpreted the state statutes relevant to the answers to the specific questions raised by this case.

Similar reasons support certification of the banks' state constitutional claim that the Foreclosure Ordinance imposes an illegal tax.  While we can identify the standard that the SJC would use, we do not see a "reasonably clear" path that the SJC would take to resolve the issue.  A proper regulatory fee, as opposed to an improper tax, would be one providing particularized benefits to the payors -- that is, the mortgagees -- and would be designed to compensate the City rather than raise revenue for it.  See Silva v. City of Attleboro, 908 N.E.2d 722, 725 (Mass. 2009).  We do not find it reasonably clear, however, whether the benefits here are particularized to the affected mortgagees.  On one hand, the banks may receive the benefit of a locally regulated mortgage foreclosure system under the Ordinance, and the SJC has recognized the existence of a regulatory system as a particularized benefit.  See id. at 727.  On the other hand, the stated purpose of the

Ordinances is "to promote the health, safety and welfare of the public, to protect and preserve the quiet enjoyment of occupants, abutters and neighborhoods, and to minimize hazards to public safety personnel inspecting or entering such properties." Springfield, Mass. Ordinances chs. 182-1, 285-8. Especially given that existing state laws already establish a regulated system of mortgage foreclosures, it is possible that, as noted by the Ordinances' statements of purpose, the true beneficiaries of the Ordinances are mortgagors and the public at large.

C.        Additional considerations

"That a legal issue is close or difficult is not normally enough to warrant certification, or else diversity cases would regularly require appellate proceedings in two courts." Bos. Gas Co., 529 F.3d at 15. We consider additional factors -- including the dollar amounts involved, the likely effects of a decision on future cases, and federalism interests -- in deciding whether to certify questions to the SJC. See id. Those and other additional considerations support certification here.

First, the outcome of this case has the potential to impact thousands of outstanding and future mortgages in Springfield. We are told other municipalities have followed or are considering following Springfield's example by enacting their own foreclosure-related ordinances. The resolution of these issues will have ramifications for thousands more mortgages throughout the

Commonwealth. <u>Cf.</u> <u>Real Estate Bar Ass'n for Mass., Inc.</u>, 608 F.3d at 119 ("[I]t is especially appropriate to certify this question to the SJC because [the question presented] raises serious policy concerns . . . that will certainly impact future cases.").

We also note that "[t]his is also not a case in which the 'policy arguments line up solely behind one solution.'" <u>In re Engage, Inc.</u>, 544 F.3d at 57 (quoting <u>Bos. Gas Co.</u>, 529 F.3d at 14). The Ordinances deal with significant problems that arise out of foreclosures and could arguably help individuals keep their homes. On the other hand, the banks assert that the Ordinances could have serious economic effects by making the state's mortgage lending market more difficult and expensive for lenders to navigate (possibly to the point of causing banks to cease lending in certain areas altogether), and that the benefits of a single statewide mortgage foreclosure system are considerable. And deciding between these competing policy interests depends in part on identifying the intent of the Massachusetts legislature in enacting its mortgage statutes and other relevant laws. "[T]hose judgments are best made by the SJC." <u>Id.</u>

This case also involves an area of traditional state authority, coupled with purely state law issues of home rule and internal state governmental organization. We are mindful that "[h]ome rule is a matter of peculiarly state and local concern. Where possible, state courts should rule in the first instance on

the scope of local governmental authority." Globe Newspaper Co., 40 F.3d at 24. Certifying questions about those issues promotes "strong federalism interests." Real Estate Bar Ass'n for Mass., Inc., 608 F.3d at 119.

### III.

We therefore certify the following questions to the SJC:

1. Are Springfield's municipal ordinances Chapter 285, Article II, "Vacant or Foreclosing Residential Property" (the Foreclosure Ordinance) or Chapter 182, Article I, "Mediation of Foreclosures of Owner-Occupied Residential Properties" (the Mediation Ordinance) preempted, in part or in whole, by those state laws and regulations identified by the plaintiffs?

2. Does the Foreclosure Ordinance impose an unlawful tax in violation of the Constitution of the Commonwealth of Massachusetts?

We would also welcome any other comments that the SJC may wish to offer on any relevant points of Massachusetts law.

The Clerk of this court is directed to forward to the Massachusetts Supreme Judicial Court, under the official seal of this court, a copy of the certified questions and our opinion in this case, along with copies of the briefs and appendix filed by the parties and amici curiae. We retain jurisdiction over this appeal, and the Contracts Clause question, pending resolution of the certified questions.

So ordered.

-15-

<u>Appendix</u>

Springfield, Mass. Ordinances ch. 285-9 (2011):

The following words and phrases, when used in this article, shall have the following meanings: . . .
OWNER
Every person, entity, service company, property manager or real estate broker, who or which, alone or severally with others:

> A. Has legal title to any real property, including but not limited to a dwelling, dwelling unit, mobile dwelling unit, or parcel of land, vacant or otherwise, including a mobile home park; or
>
> B. Has care, charge or control of real property, including but not limited to any dwelling, dwelling unit, mobile dwelling unit, or parcel of land, vacant or otherwise, including a mobile home park, or any administrator, administratrix, executor, trustee or guardian of the estate of the holder of legal title; or
>
> C. Is a mortgagee of any such property who has initiated the foreclosure process as defined in this article; or
>
> D. Is an agent, trustee or other person appointed by the courts and vested with possession or control of any such property; or
>
> E. Is an officer or trustee of the association of unit owners of a condominium. Each such person is bound to comply with the provisions of these minimum standards as if he were the owner. However, "owner" shall not mean a condominium association created pursuant to MGL c. 183A to the extent that such association forecloses on or initiates the foreclosure process for unpaid assessments due or owing to the association; or
>
> F. Every person who operates a rooming house; or
>
> G. Is a trustee who holds, owns or controls mortgage loans for mortgage-backed securities transactions and has initiated the foreclosure process.