# United States Court of Appeals
## For the First Circuit

No. 24-1931

JEREMIAH NICHOLLS, WALTER GOODROW, WESLEY DINSMORE,

RICHARD RUPPERT,

Plaintiffs, Appellants,

v.

VEOLIA WATER CONTRACT OPERATIONS USA, INC.,

f/k/a Suez Water Environmental Services, Inc.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Gelpí, Lynch, and Thompson,
Circuit Judges.

Terence E. Coles, with whom Pyle Rome Ehrenberg, P.C. was on
brief, for appellants.
Stephen T. Melnick, with whom Shea A. Miller and Littler
Mendelson, P.C. were on brief, for appellee.

July 22, 2025

LYNCH, **Circuit Judge**.  This case presents a statutory interpretation question of first impression regarding a 1997 Massachusetts special act, entitled "An Act Authorizing the Springfield Water and Sewer Commission to Enter into Contracts for the Operation and Maintenance, Lease or Sale, and Modification of the Wastewater Treatment Plant, Sewer, and Pump Stations," ("Special Act"), 1997 Mass. Acts ch. 155.  The central point of contention is the extent to which a company that has contracted with the Springfield Water and Sewer Commission is obligated to pay its employees prevailing wages under the Massachusetts Prevailing Wage Act (PWA), Mass. Gen. Laws ch. 149, §§ 26-27H (2024).

Employees of appellee Veolia Water Contract Operations USA, Inc., brought this suit in Massachusetts state court alleging that they were entitled to prevailing wages for certain work they performed as Veolia's employees because that work fell within the scope of the PWA.  Veolia removed this case to federal court on the basis of diversity jurisdiction.  The employees appeal from the district court's entry of summary judgment for Veolia based on its various conclusions that the Special Act excepted Veolia from any obligation to pay appellants prevailing wages.  Because the outcome of this case turns on unresolved questions of Massachusetts law and raises significant policy concerns better suited for resolution by the Massachusetts Supreme Judicial Court, we certify

the dispositive state law questions to that court.  See Mass. S.J.C. R. 1:03.

## I.

The PWA "govern[s] the setting and payment of wages on public works projects." Donis v. Am. Waste Servs., LLC, 149 N.E.3d 361, 367 (Mass. 2020) (alteration in original) (quoting McCarty's Case, 837 N.E.2d 669, 677 (Mass. 2005) (Sosman, J., concurring)). The PWA was originally enacted in 1935, and § 27D, the section most relevant to this case, was amended in 1955, 1958, and 1961. See Mass. Gen. Laws ch. 149, § 27D (2024).  It is part of a comprehensive statutory scheme setting out the process by which Massachusetts government entities solicit and enter into contracts for the provision of goods and services related to the construction of public works.  See, e.g., Mass. Gen. Laws ch. 30, § 39M (2024) (setting out the process for awarding contracts for construction services and materials); Mass. Gen. Laws ch. 149, § 44A (2024) (setting out the process for soliciting bids for public works construction contracts).  The PWA's "primary goal is 'to achieve parity between the wages of workers engaged in public construction projects and workers in the rest of the construction industry.'" Donis, 149 N.E.3d at 367 (quoting Mullally v. Waste Mgmt. of Mass., Inc., 895 N.E.2d 1277, 1282 (Mass. 2008)).

The text of the PWA describes the kinds of work to which it applies, including any "construction" work, which the PWA defines broadly:

> Includ[ing] additions to and alterations of public works, the installation of resilient flooring in, and the painting of, public buildings and public works; certain work done preliminary to the construction of public works, namely, soil explorations, test borings, and demolition of structures incidental to site clearance and right of way clearance; and the demolition of any building or other structure ordered by a public authority for the preservation of public health or public safety.

Mass. Gen. Laws ch. 149, § 27D (2024). Under the PWA, government entities seeking to enter into contracts for the construction of public works must provide the Department of Labor Standards (DLS) with a list of all work which falls within the PWA's scope. See id. § 27. The DLS commissioner then sets a schedule of the wages to be paid for that work. See id.

The 1997 Special Act modifies this statutory scheme just described in certain respects. Section 1 of the Special Act states that:

> [C]ontracts for the sale or lease, operation and maintenance, financing, design and construction of modifications and installation of new equipment and systems . . . shall not be subject to the competitive bid requirements set forth in sections 38A1/2 to 38 O, inclusive, of chapter 7, section 39 M of chapter 30 or sections 44A to 44J, inclusive of chapter 149 of the General Laws[.]

1997 Mass. Acts ch. 155, § 1.  But section 1 itself is subject to further modifications and exceptions.  The contract must "be awarded pursuant to the provisions of chapter 30B of the General Laws, except for clause (3) of paragraph (b) of section 6, clause (3) of paragraph (e) and paragraph (g) of said section 6 and sections 13 and 16 of chapter 30B."  Id.  The Special Act does not explicitly state whether the Springfield Water and Sewer Commission is exempted from its obligations under the Prevailing Wage Act, which is contained in sections 26-27H of chapter 149 of the Massachusetts General Laws.

Section 6 of the Special Act modifies the statutory scheme as it applies to individuals and companies that have been awarded contracts pursuant to the Special Act.  Section 6 states that:

> The provisions of any general or special law or regulation relating to the advertising, bidding or award of contracts, to the procurement of services or to the construction and design of improvements, except the provisions of sections 26-27H, inclusive, of chapter 149 of the General Laws, shall not be applicable to any selected offeror which is awarded a contract pursuant to this act, except as provided in this section.

Id. § 6 (emphasis added).  Section 6 also authorizes contractors to act as "agent of the commission" and "solicit[] . . . bids for the construction of any new capital improvement or for any renovation, modernization, installation or replacement work" that

- 5 -

is "estimated to cost more than $100,000" and "not specifically included in the initial contract." Id. Section 6 further specifies the process by which such bids are to be solicited and awarded, and that the need for any such work must be independently assessed by a "qualified wastewater engineer." Id. Based on that engineer's recommendation, the commission then "approve[s], modif[ies], or reject[s] the contractor's proposed plans and specifications." Id.

In its present posture, this case turns on three defenses Veolia has raised to appellants' claim that Veolia was required to pay prevailing wages as to the work specified in the employees' complaint. Veolia first argues that 1997 Mass. Act ch. 155 § 6 exempts Veolia from complying with the Prevailing Wage Act as to its employees, except for those employees engaged in "the construction and design of improvements." Veolia contends that "the construction and design of improvements" should be read to incorporate only the ordinary meaning of "construction," not the broader definition given to the term by the PWA, and that appellants' work does not fall within that ordinary meaning. Second, Veolia argues that its contract with the Springfield Water and Sewer Commission does not independently require payment of prevailing wages to the appellants in this case.[1] And third,

_____

[1] We understand Veolia to have abandoned an argument it made at summary judgment to the district court. At summary

Veolia argues that the Special Act is incompatible with the PWA under the logic of Metcalf v. BSC Group, Inc., 214 N.E.3d 1043, 1049-51 (Mass. 2023), such that the PWA does not apply. This opinion concerns our reasons for certification of the several issues inherent in Veolia's first and third defenses.

## II.

The Massachusetts Supreme Judicial Court's rules permit a federal court to certify a question to it "if there are involved in any proceedings before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court." Mass. S.J.C. R. 1:03. In our view, this case meets those requirements.[2]

judgment, Veolia appeared to argue that, even if the Special Act did not exempt Veolia from an obligation to pay appellants prevailing wages, it could still not be held liable for violating the PWA because its contract with the Springfield Water and Sewer Commission did not require it to pay prevailing wages. Veolia argued that "where a public body does not include a prevailing wage schedule with the contract or otherwise require payment of prevailing wages, an employer is not required to pay prevailing wages to its employees." Veolia's argument has subsequently shifted, and we do not take it to advance this argument on appeal.

[2] Though neither party requested certification, we have discretion to certify questions to the Massachusetts Supreme Judicial Court sua sponte. See Williams v. Am. Honda Fin. Corp., 858 F.3d 700, 701 (1st Cir. 2017) (per curiam) ("The outcome of this case hinges entirely on questions of Massachusetts law concerning which the Massachusetts courts have not spoken. Therefore, even though the parties have not requested it, we certify three questions to the Massachusetts Supreme Judicial Court pursuant to Massachusetts Supreme Judicial Court Rule 1:03."). We advised the parties at oral argument that we were

- 7 -

We have interpreted the Massachusetts Supreme Judicial Court's requirement that there be "no controlling precedent" to prevent certification in cases when "the course [the] state court[] would take is reasonably clear." In re Engage, Inc., 544 F.3d 50, 53 (1st Cir. 2008) (alterations in original) (quoting Nieves v. Univ. of P.R., 7 F.3d 270, 275 (1st Cir. 1993)). The course that the highest court in Massachusetts would take is not reasonably clear when a case "presents a close and difficult legal issue." Id. This case presents close and difficult legal issues, and we cannot say that the course that the Massachusetts Supreme Judicial Court would take is reasonably clear.

The parties have not directed us to any case interpreting the meaning of the phrase "construction and design of improvements" as used in the Special Act, nor have we located any. Indeed, we have found no case addressing the Special Act in any respect. Nor have we found any legislative history as to the Special Act, and

considering certification and gave them an opportunity to propose questions to certify. The parties did not object to certification, though they could not agree on the questions to be certified. We have adopted appellants' formulation of the questions to be certified, and construe appellee's submission of alternate questions as an objection to the questions to be certified. This is not a barrier to certification, however, as the Massachusetts Supreme Judicial Court has previously answered certified questions even over the objections of both parties. See, e.g., Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 640 N.E. 2d 1101, 1102 (Mass. 1994) (answering certified question); Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1224 (1st Cir. 1994) (noting opposition to certification).

at oral argument, the parties said they had found none. To be sure, the Massachusetts Supreme Judicial Court has clearly articulated the method by which Massachusetts statutes are to be interpreted. See, e.g., MacLaurin v. City of Holyoke, 56 N.E.3d 1254, 1256 (Mass. 2016); Town of Hadley v. Town of Amherst, 360 N.E.2d 623, 626 (Mass. 1977). But application of Massachusetts law concerning statutory interpretation to the Special Act does not point to a meaning of the term "construction and design of improvements" that is reasonably clear. The parties do not argue to us that section 6 of the Special Act should be read to apply the PWA to any endeavor other than "the construction and design of improvements." Appellants argue that this phrase incorporates the specialized meaning of "construction" used in the PWA, whereas Veolia argues that it incorporates only the plain meaning of that word, and that the legislature's use of the word "improvements" modifies the word "construction" in some important respect. And although the parties do not advance any arguments as to the circumstances in which section 6 applies as a whole, it seems possible that the procedures and exemptions outlined in section 6 only apply when a contractor is soliciting and entering into subcontracts and have no bearing on a contractor's obligations as to its own employees.

The question also arises of whether the PWA and the Special Act are incompatible.[3] As to the issue of incompatibility, Veolia presents an argument based on its reading of Metcalf, 214 N.E.3d at 1043. It is not certain how the Massachusetts Supreme Judicial Court would weigh the factors it identified in Metcalf in the context of the PWA and the Special Act, or whether it would consider Metcalf relevant. There are substantial differences between the Special Act and the general law, Mass. Gen. Laws ch. 7C, § 58 (2024), at issue in Metcalf. Unlike § 58, the Special Act explicitly references the PWA in section 6 and is explicit about which other laws do and do not apply to any contracts entered into by the Water and Sewer Commission. Further, the Special Act does not, like § 58, exclusively involve contracts that are "untethered to a specific public works construction project." Metcalf, 214 N.W.3d at 1044. Rather, the Commission may, at its discretion, award contracts for discrete projects. See 1997 Mass. Act ch. 155, § 1. It also may be relevant that the Special Act is not a generally applicable law, as was § 58, and applies only to the Springfield Water and Sewer Commission. See id.

_____

    [3] We reject Veolia's broad argument that the two acts are incompatible in all applications. We do so because it is clear some effort was made to reconcile the two acts given the references in the Special Act to the PWA and its language. This also raises the issue of the canon of statutory construction in pari materia. This issue may be resolved by the Massachusetts Supreme Judicial Court.

"That a legal issue is close or difficult is not normally enough to warrant certification, or else diversity cases would regularly require appellate proceedings in two courts." Bos. Gas Co. v. Century Indem. Co., 529 F.3d 8, 15 (1st Cir. 2008). This case involves significant policy choices as to the interplay among overlapping Massachusetts laws concerning public works projects and the expenditure of public funds, as well as policy concerning fair wages for public works construction.

The outcome of this case is likely to have a substantial impact on the formulation of Massachusetts statutes and special acts going forward. This is "an area of traditional state authority, coupled with purely state law issues of home rule and internal state governmental organization." Easthampton Sav. Bank v. City of Springfield, 736 F.3d 46, 53 (1st Cir. 2013). As we have previously observed, "[w]here possible, state courts should rule in the first instance on the scope of local governmental authority." Globe Newspaper Co. v. Beacon Hill Architectural Comm'n, 40 F.3d 18, 24 (1st Cir. 1994). "Certifying questions about those issues promotes 'strong federalism interests.'" Easthampton Sav. Bank, 736 F.3d at 53 (quoting Real Est. Bar Ass'n for Mass., Inc. v. Nat. Real Est. Info. Servs., 608 F.3d 110, 119 (1st Cir. 2010)).

## III.

We therefore certify the following questions to the Massachusetts Supreme Judicial Court:

> 1.  What is meant by the phrase "construction and design of improvements" as used in section 6 of 1997 Mass. Acts. ch. 155?
>
> 2.  Is 1997 Mass. Acts. ch. 155 incompatible with the Prevailing Wage Act, Mass. Gen. Laws ch. 149, §§ 26-27H (2024), under the court's decision in Metcalf v. BSC Group, Inc., 214 N.E. 3d 1043 (Mass. 2023)?

We would also welcome any other comments that the Massachusetts Supreme Judicial Court may wish to offer on any relevant points of Massachusetts law.  The Clerk of this court is directed to forward to the Massachusetts Supreme Judicial Court, under the official seal of this court, a copy of the certified questions and our opinion in this case, along with copies of the briefs and appendix filed by the parties.  We retain jurisdiction over this appeal pending resolution of the certified questions.

So ordered.